## SMITH v. UNITED STATES.

(Court of Appeals of District of Columbia. Submitted November 3, 1924. Decided December 1, 1924. Rehearing Denied December 20, 1924.)

No. 4120.

1. **Criminal law ⬅⟹755½—Considerable latitude allowed judge in commenting on evidence, if ultimate determination of issues is clearly left to jury.**

In federal courts, considerable latitude is allowed trial judge in commenting on evidence, if ultimate determination of issues of fact is clearly left to jury.

2. **Criminal law ⬅⟹762(3)—Charge held comment on evidence.**

In prosecution for assault on deputy marshal, who tried to force way into inner office of corporation of which defendant was an officer, in which there was a sharp conflict in the evidence as to whether the deputy marshal disclosed his identity, and fact that he wished to serve paper, charge stating that, "if the time has come when officers cannot serve the process of the United States, then it is a sad time," *held* improper, in that it indicated to jury court's view that deputy marshal had disclosed identity and mission.

Appeal from Supreme Court of District of Columbia.

Arthur W. Smith was convicted of assault, and he appeals. Reversed and remanded.

J. A. O'Shea, of Washington, D. C., for appellant.

Peyton Gordon, of Washington, D. C., for the United States.

Before MARTIN, Chief Justice, and ROBB and VAN ORSDEL, Associate Justices.

ROBB, Associate Justice. Appeal from a judgment in the Supreme Court of the District, under which appellant, defendant below, was sentenced to serve a year in jail for alleged assault upon Charles G. Dempsey, a deputy United States marshal.

Dempsey testified that on the morning of December 8, 1917, at about 9:30 o'clock, he went to No. 458 Pennsylvania Avenue, Northwest, to serve a writ on J. W. Babson; that, "entering the place of business, there was a young fellow at the typewriter; that he saw no one else; that he started around through the gate, and he started to go into the office; that he got information from the young man that J. W. Babson was in the office; that about that time the defendant Smith appeared in the office, and witness told him he was a deputy United States marshal and had a writ to serve on Babson; · that defendant Smith told the witness to 'go to hell out of here'; that they came together; that they pushed and shoved, and that witness started away and defendant followed him; that witness asked defendant what he meant by insulting an officer of the law; * * * that witness started to get his umbrella and defendant struck him over the head; * * * that he announced that he was a deputy United States marshal and that he would get a warrant out for the defendant."

For the defendant, the witness Springman testified that when Dempsey came in he asked to see Babson; that he had no papers in his hand; that witness told Dempsey to wait a moment, and then notified the defendant that there was somebody waiting for Babson; that witness then went back and told Mr. Dempsey that Babson was busy, but that he would, see him in a short while; that some time thereafter Smith came from the inner office; witness looked around, and he saw Dempsey inside the inclosure on his way to the inner office; that he had his umbrella raised; that witness Smith put his arms around him to keep him from striking him; that witness did not see Smith hit him; that witness Smith did not hit the witness Dempsey, * * * that witness does not remember Dempsey saying he was a deputy marshal; that. Dempsey was excited.

The bookkeeper, Mr. Connor, who was present, testified that he was watching Dempsey; that Smith put both arms around Dempsey to keep him from going in; "that he did not see Smith strike Dempsey; that he did not hear Dempsey say that he was a deputy marshal."

The testimony of other witnesses present did not differ materially from that of Springman and Connor.

Defendant, testifying in his own behalf, stated that he was married and had four children; that he worked for the Norris-Peters Company as treasurer, and had been employed by them for 21 years; that he had never been in trouble before; "that a man came into the office and said he wanted to see Mr. Babson; that witness told him he was busy, but would see him in a short while; that witness went into Mr. Babson's office, and when he returned he found the man, whom he afterwards learned was Dempsey, within the rail; that Dempsey said he was going to see Mr. Babson now; that witness backed toward Mr. Babson's door, and as witness was crossing the door Dempsey grabbed witness by the throat, and struck him with an umbrella on the head, and forced him against the partition; that witness broke his hold on the throat and picked Dempsey up under his arms, and that Dempsey's back was toward witness; that he carried him out to the gate and set him down; that he told him to wait there if he wanted to see Mr. Babson; that it was then that witness learned for the first time that the man was a deputy United States marshal by what the man said; that the man said he was going to get a warrant out for him; that he then left the building; that witness did not strike him." ·

Nine witnesses testified "that they had known the defendant for a great number of years, and that his reputation for peace and good order was excellent."

Defendant offered two prayers, to the effect that, if the witness Dempsey failed to disclose to the defendant that he was a deputy United States marshal and as such had authority to execute legal process, and failed to make known his business, the defendant had the right to treat him as a trespasser, and could use such force as was reasonably necessary to eject him from the premises. The court denied these prayers.

At the outset of the charge to the jury the court said: "This is an indictment for a simple assault only, but, as has been said, it is an important case. If I may be allowed to express an opinion on that subject, I think it is one of the most important cases that I have ever heard—not because the punishment for a simple assault provid-

ed by the statute is as severe as it is in many other cases that are tried here, but because the claim of the government is that this man, the defendant, committed the assault upon Mr. Dempsey when he knew he was there in the performance of a public duty, and for that reason it is entitled to the gravest and most careful consideration at your hands. If the time has come when officers cannot serve the process of the United States, then it is a sad time."

The defendant duly noted an exception to this portion of the charge, which is here assigned as error.

In the charge to the jury, given in place of the prayers offered by the defendant, the court said: "Mr. Dempsey was in there to serve a paper. There is no doubt about that; nobody questions that. That is what he went there for. If he informed the defendant of that fact, no matter by what words or acts, if he informed him of the fact that he was a deputy United States marshal and was there to serve a paper on Mr. Babson, then any assault or interference with him in the performance of his duty was breach of the law."

It is apparent that there is a sharp conflict in the evidence as to whether Dempsey disclosed his identity and mission prior to his encounter with the defendant. It does not appear from the record that Dempsey was in uniform, that he displayed a badge, or that anything in his appearance indicated he was an officer. Nor did Dempsey testify that he informed the "young fellow at the typewriter" (Springman), whom he first encountered, either that he was an officer, or as to why he wished to see Babson. His testimony on this point is that, having ascertained from Springman where Babson was, "he started around through the gate and he started to go into the office." Then it was that the defendant appeared, having been summoned by Springman. While the evidence for the government tends to show that Dempsey, at this point, made known his identity and mission, the evidence for the defendant is to the contrary, and it is needless to say that the determination of this issue of fact was for the jury.

[1, 2] In the federal courts considerable latitude is allowed the trial judge in commenting upon the evidence, if the ultimate determination of issues of fact is clearly left to the jury. Graham v. United States, 231 U. S. 474, 34 S. Ct. 148, 58 L. Ed. 319; Horning v. District of Columbia, 254 U. S. 135, 41 S. Ct. 53, 65 L. Ed. 185. Trial by jury would be an idle ceremony,

however, were the judge permitted first to characterize a prosecution for simple assault as one of the most important ever heard by the court, then to admonish the jury that the case "is entitled to the gravest and most careful consideration" at their hands, and finally to say that, "if the time has come when officers cannot serve the process of the United States, then it is a sad time." While the court then said that it was for the jury to "find out from the evidence whether that was the situation or not," the cause of the defendant was so prejudiced by what the court already had said that the latter expression had little, if any, tendency to undo the harm already done, especially in view of the subsequent statement by the court in the charge that "the charge is that the defendant committed an assault upon Mr. Dempsey; there is no doubt that he did."

The jury properly attaches great weight to the words of the court, and necessarily is influenced by the attitude of the court. In this case, the jury naturally and inevitably would conclude that, instead of being a prosecution for simple assault, the case presented a question really much broader, "because the claim of the government is that this man, the defendant, committed the assault upon Mr. Dempsey when he knew he was there in the performance of a public duty." It will be noted that the court referred to the defendant as "this man," but to the prosecuting witness as "Mr. Dempsey." The words, "If the time has come when officers cannot serve the process of the United States, then it is a sad time," clearly indicated to the jury, not only the court's views as to the weight of the evidence, but as to the duty of the jury to reach the same conclusion. The effect of the charge well may have been to overcome the will of the jury and to substitute therefor the views of the court. We are constrained to rule that this was error.

Three hundred years ago, Francis Bacon, while Lord Chancellor of England, in forwarding the king's patent to Mr. Sergeant Hutton, carrying his appointment as a justice of the Court of Common Pleas, ventured to advise him respecting his judicial conduct in part as follows: "That you be a light to jurors to open their eyes, but not a guide to lead them by the noses." After three centuries, this advice remains as sound as when uttered.

Nor do we think that the court, in the general charge, substantially covered the prayers offered on behalf of the defendant.

As already pointed out, there was no evidence whatever tending to show that anything about Dempsey's appearance indicated he was an officer. How, then, could it be said that he might have informed defendant of his identity by "acts"? This term was misleading, and should not have been used.

The judgment must be reversed, and cause remanded for a new trial.

Reversed and remanded.