## SULLIVAN v. UNITED STATES.

### No. 10217.

United States Court of Appeals
District of Columbia Circuit.

Argued Oct. 10, 1949.

Decided Nov. 28, 1949.

Mr. Louis Jongbloet, Washington, D. C., for the appellant. Mr. Leonard L. Leimbach, Washington, D. C., also entered an appearance for the appellant.

Mr. L. Clark Ewing, Assistant United States Attorney, Washington, D. C., with whom Messrs. George Morris Fay, United States Attorney, and Joseph M. Howard, Assistant United States Attorney, Washington, D. C., were on the brief, for appellee.

Before CLARK and PROCTOR, Circuit Judges, and MORRIS, District Judge, sitting by designation.

PROCTOR, Circuit Judge.

Appellant was convicted in the District Court for forging and uttering a physician's prescription for a narcotic drug "for the purpose of defrauding the United States," in violation of 18 U.S.C.A. § 494.

Of the contentions in appellant's behalf we think only one raises a question of importance. That concerns the intent with which he wrote the false prescription and presented it at a drug store. The prosecution contended that he did so to obtain the drug, and that this purpose constituted an intent to defraud the United States by frustrating administration of its laws regulating the sale of narcotics. Appellant denied any purpose to obtain the drug. He insisted that he wrote the prescription and offered it to the drug clerk with the sole intention and desire to bring about his arrest and commitment to a government hospital, where he could receive treatment for trigeminal neuralgia, from which he was then suffering, and which, over a period of years, had brought about an addiction to narcotic drugs in using them to allay his suffering.

The opposing contentions formed the real issue for the jury's decision. Concerning that issue the court charged the jury as follows:

"You are further instructed that in order to establish a purpose to defraud the United States, within contemplation of [the] statute making uttering of a forged writing for the purpose of defrauding the United States an offense, proof that the Government would thereby suffer a pecuniary loss is unnecessary, but it is enough that the unlawful activity be engaged in for the purpose of frustrating the administration of a statute, or that it tends to impair a governmental function.

"In regard to the second count of the indictment, 'utter and publish' means to offer

it for the purpose of obtaining narcotics. I think that is clear without any instructions further on that.

"If you find from the evidence, beyond a reasonable doubt, that the defendant did forge this prescription, and he admits that he did, and that was with the intent of defrauding the United States, as the term has been defined to you in the instructions I just gave you, then it would be your duty to find him guilty.

"If you fail to so find, you should acquit him, or if you entertain a reasonable doubt thereof, you should acquit him.

"The same instruction with regard to the second count of the indictment. *He admits that he offered it to the drug store. I will tell you, as a matter of law, that is uttering and publishing* if it comes within the meaning of the law as I have defined here in the first count of the indictment."

. * * * * * *

"I am going to try to tell you what the defendant has admitted. He admits that he forged this piece of paper, signed the doctor's name to it, and that he presented it to the druggist, he says, for the purpose of not obtaining narcotics but in order that he might be arrested and in that manner be admitted to an institution of the Government whereby he would obtain medical attention. There is not any direct proof that he intended to get the morphine, except that you might infer he did when he presented it. He says he did not.

"*Now, does that constitute an intent to defraud the Government? In my judgment, it does,* under the provision there that if it tends to frustrate the administration of the statute or tends to impair a governmental function, then, it amounts to an intent to defraud.

"I will submit the question, however, to you to determine whether or not *under the instructions I have given you* he had the necessary intent to defraud the Government in determining whether or not he is guilty within the meaning of the terms I have defined to you."

* * * * * * .

"Now, as to whether or not the Defendant intended to defraud the Government, I think I should give you this additional instruction, that every person is presumed to intend the natural and probable consequences of his act. If the natural and probable consequences of what he did, as you find from the evidence, was to frustrate the enforcement of this law or interfere with the proper function of the Government, then you shouldn't accept his statement that he did not intend to defraud the Government, because if his act shows he intended to do that, and that is the result, regardless of what he says about it, that is the legal result.

"You are the sole judges of the weight of the evidence and credibility of the witnesses. Anything that the Court may say to you about the evidence is not binding on you. You recall that for yourselves. If you do not agree with what the Court said in regard to the evidence, it is not only your duty but your privilege to disregard what the Court said."

We have italicized parts of the charge which give us foremost concern. We pass other parts such as references to frustration of administration of the statute and impairment of governmental functions, which at best are generalized abstractions likely to confuse a jury. The real question for them was whether the defendant's acts were done with intent to obtain the drug. If so, there was a purpose to defraud the government by impairing administration of its laws regulating the sale of narcotics.

As to that controlling issue, the court, in referring to defendant's testimony, stated, "He admits that he offered it [the prescription] to the drug store. I will tell you, as a matter of law, that is uttering and publishing * * *." True, the court added, "if it comes within the meaning of the law as I have defined here in the first count of the indictment." Those words, too, are confusing. We are not sure just what they mean. However, we think the likely effect of the entire statement was to impress the jury with a belief that the defendant's admitted presentation of the prescription at the store legally amounted to an uttering within the meaning of the statute. Whereas, there was, of course, no such uttering unless the defendant actually intended to

get the drug, for otherwise the fraudulent purpose essential to a criminal uttering was lacking.

Again, the court, in referring to defendant's testimony, told the jury, "There is not any direct proof that he intended to get the morphine, except that you might infer he did when he presented it. He says he did not. Now, does that constitute an intent to defraud the Government? In my judgment, it does, * * *." We think the clear effect of this statement was to inform the jury that, in the court's judgment, admitted acts of the defendant established the requisite fraudulent intent. As intent was the vital issue the statement was tantamount to expressing the court's judgment that the defendant was guilty.

The expression of such an opinion goes beyond the privilege of a judge to comment fairly on the facts. Comment upon evidence must be distinguished from expression of an opinion upon an ultimate issue determinative of guilt or innocence. The ill effect cannot be offset by instructing the jurors that the court's opinion is not binding on them and that they are the sole judges of the facts. Fryer v. U. S., 7 Cir., 1926, 11 F.2d 707, 708. We think, as did this court in Smith v. U. S., 1924, 55 App.D. C. 117, 2 F.2d 919, 921, that such statements have little, if any, tendency to undo the harm already done. The influence of the trial judge on the jury is of great weight, and his lightest word or intimation is received with deference and may prove controlling. Quercia v. U. S., 1933, 289 U.S. 466, 470, 53 S.Ct. 698, 77 L.Ed. 1321. That is especially so in a criminal trial. The damaging influence is more likely where conflicting evidence on a crucial issue leaves the outcome close, as it might have been in this case. Here, the defendant's testimony that he did not intend to obtain the drug, but only to bring about his commitment to a hospital, was supported by evidence that he was in a distressing state of physical and mental suffering; that he had sought advice from government officers as to how he might obtain admission to an institution; that he had notified a Narcotics Bureau agent of his intention to write and offer the prescription in order to bring about his arrest; that by reason of such information the agent went to the drug store and arrested appellant immediately after the prescription was handed to the clerk, and that at the time the prescription was presented, the defendant was without money to pay for the drug.

We cannot escape the conclusion that there was prejudicial error. Accordingly the judgment is

Reversed.