**BILLECI v. UNITED STATES.**

**LEWIS v. UNITED STATES.**

Nos. 10525, 10526.

United States Court of Appeals
District of Columbia Circuit.

Argued April 28, 1950.

Decided August 2, 1950.

Mr. Myron G. Ehrlich, Washington, D. C., with whom Mr. Joseph Sitnick, Washington, D. C., was on the brief, for appellant Billeci.

Mr. William H. Collins, Washington, D. C., with whom Mr. Bernard Margolius, Washington, D. C., was on the brief, for appellant Lewis.

Mr. William Hitz, Assistant United States Attorney, Washington, D. C., with whom Messrs. George Morris Fay, United States Attorney, and Edward L. Carey and Robert M. Scott, Assistant United States Attorneys, all of Washington, D. C., were on the brief, for appellee. Mr. L. Clark Ewing, Assistant United States Attorney, Washington, D. C., also entered an appearance for appellee.

Before EDGERTON, PRETTYMAN and PROCTOR, Circuit Judges.

PRETTYMAN, Circuit Judge.

Appellants were indicted for violation of a statute which provides that, if any person shall within the District of Columbia be

concerned in any manner in managing or carrying on a lottery, upon conviction he shall be fined or imprisoned or both.[1] The indictment in full was:

"The Additional Grand Jury empaneled and sworn in May 1948 charges:

"During the period from about June 1, 1948, to about March 25, 1949, within the District of Columbia, William Lewis, Attilio Acalotti, alias Ortillo Acolotti, and Frank Billeci, were concerned as owners, agents, and clerks, and in other ways, in managing, carrying on, promoting and advertising a lottery known as the numbers game."

Appellants were tried before a jury, convicted, and sentenced.

Upon these appeals appellants raise 25 points, two of which relate to 16 alleged failures of the court to instruct the jury in various respects. We have examined each of the points presented but find it necessary to discuss only seven of them.

■ 1. Evidence presented by the Government included, as exhibits, property seized by deputy marshals under a search warrant. Motions to suppress that evidence and proper objections to its presentation were duly made and denied. Appellants say that the alleged search warrant was improperly issued and executed. The warrant was issued by a United States Commissioner in Maryland and directed the United States Marshal for the District of Columbia to search premises located in Maryland. The warrant was executed by deputy marshals for the District of Columbia, the place searched being the one described in the warrant and being located in Maryland. Appellants say that a marshal has no power to execute a search warrant outside of his own district. The statute on the subject is an act of June 15, 1935.[2] It provides:

"It shall be the duty of the marshal of each district to attend the district courts when sitting therein and to execute all lawful precepts issued under the authority of the United States; and he shall have power to command all necessary assistance in the execution of his duty."

Prior to the enactment of that act the statute had given a marshal authority to execute writs "throughout the district". The statute then read:

"It shall be the duty of the marshal of each district to attend the district and circuit courts when sitting therein, and to execute, throughout the district, all lawful precepts directed to him, and issued under the authority of the United States; and he shall have power to command all necessary assistance in the execution of his duty." [3]

Appellants make an appealing argument to the effect that the enactment of 1935, eliminating the phrase "throughout the district", was intended to facilitate the service of arrest warrants, that Congress did not contemplate the effect of the amendment on search warrants, and that to give literal effect to the amendment would possibly open the door to grave abuses in respect to search warrants. However, Congress made no distinction between arrest warrants and search warrants, and we cannot ignore the action of Congress in eliminating the phrase "throughout the district" from the statute. We hold that the search was validly executed.

■■ 2. The deputy marshals who executed the search warrant testified that, in addition to the property alleged to be gambling paraphernalia, they found on the premises two telephone installations, to which three telephones were attached; that while they were there the telephone rang many times and they answered. They testified that the callers either immediately hung up, or asked for one of the men who had been found on the premises, or placed bets on numbers. Appellants say that this testimony as to what was said over the telephone to the deputy marshals was inadmissible, not only because the alleged search warrant was illegal and the officers were therefore illegally upon the premises, but also because the testimony was in violation

1. 31 Stat. 1330 (1901), as amended, D.C. Code, § 22-1501 (1940).

2. 49 Stat. 377. This act is now codified under Sec. 547, Title 28, U.S.C.A.

3. Rev.Stat. § 787. This was then Sec. 503 of Title 28, U.S.C.A.

of the Communications Act,[4] which prohibits the divulging of any intercepted communication. They rely upon United States v. Polakoff,[5] Nardone v. United States,[6] Nardone v. United States,[7] and Weiss v. United States.[8] The trial court admitted this evidence for the limited purposes of showing the nature of the premises and the geographical and jurisdictional scope of the activities conducted there. It did so upon authority of Commonwealth v. Jensky[9] and Beard v. United States.[10] The judge rendered a written opinion upon the applicability of the Communications Act,[11] the latter part of which opinion is devoted to this particular phase of the case. We agree with that court in its view that the action of the marshals in picking up the telephones when they rang and listening to what the callers had to say did not constitute an interception within the meaning of the statute. Perhaps, if the marshals had impersonated the wanted recipients, a different question might be presented. But in the conversations in the case at bar the callers, in some cases after being advised that the desired recipients of the messages were not there, proceeded to say what they had to say to whoever might have responded to the calls. We think that interception of a phone call necessarily involves the idea that a speaker thinks he is talking to one person whereas in fact a third person is listening. When a person calls a number on the telephone and speaks a message to whoever answers, we do not think that he can claim that his message was intercepted, merely because the person responding is not the person he intended to speak to. We intimate no opinion upon a situation in which the responding party impersonates the person for whom the call is avowedly intend-

ed. We find no error in the admission of this evidence in the present case.

3. During the course of the trial numerous witnesses called by the Government refused to answer questions, on the ground that their testimony might tend to incriminate them. Appellants requested the court to give the following instruction to the jury:

"The Jury is instructed that on several occasions during the trial, witnesses declined to answer, on the ground that their answer might tend to incriminate them and, in this connection, you are advised that the law is that such refusal by those witnesses shall not in any way or manner be considered by you to the prejudice of the defendant Lewis, and that the question which the particular witness refused to answer, permits no inference of any kind, to be drawn by you therefrom, as against the defendant Lewis."

The court denied the instruction, saying to counsel: "I am not going to say this to the jury, but my own view is that a jury has a right to infer that if the witness had answered the question, the answer would be unfavorable to the defendant, because here is a witness saying, in effect, 'I refuse to answer because my answer might help prove I committed a crime.' I think a jury has a right to draw an unfavorable inference from that." And later the court said, "I am going to let them [the prosecutors] argue it; but I am not going to say anything in my charge to the jury one way or another." Objections were made to the denial of the instruction and also to the permission granted by the court to the prosecutors.

▮ The court was in error in its statement of the law on this point.[12] If

4. Act of June 19, 1934, 48 Stat. 1103, 47 U.S.C.A. § 605.

5. 2 Cir., 1940, 112 F.2d 888, 134 A.L.R. 607, certiorari denied, 1940, 311 U.S. 653, 61 S.Ct. 41, 85 L.Ed. 418.

6. 1937, 302 U.S. 379, 58 S.Ct. 275, 82 L.Ed. 314.

7. 1939, 308 U.S. 338, 60 S.Ct. 266, 84 L.Ed. 307.

8. 1939, 308 U.S. 321, 60 S.Ct. 269, 84 L.Ed. 298.

9. 1945, 318 Mass. 350, 61 N.E.2d 532.

10. 1936, 65 App.D.C. 231, 82 F.2d 837, certiorari denied, 1936, 298 U.S. 655, 56 S.Ct. 675, 80 L.Ed. 1382.

11. United States v. Lewis, D.C.1950, 87 F.Supp. 970.

12. Beach v. United States, C.C., 46 F. 754 (opinion by Mr. Justice Field on circuit, 1890).

the prosecution puts a witness on the stand and the witness refuses to testify because his answer might incriminate him, the jury cannot infer that his testimony, if given, would be adverse to the defendant. The witness has a constitutional right to refuse to testify if the testimony would incriminate him, but the posssible guilt of the witness is not inferrable to the defendant. Such an inference, without more support, would be no more than speculation. The prosecutor did not press the point in his argument, but it does appear that he at least once asked the jury to infer that the testimony of these witnesses, if given, "would be . . . damaging to the defendants' case".

We think that the correct rule is that, when a witness declines to answer a question on the ground that his answer would tend to incriminate him, that refusal alone cannot be made the basis of any inference by the jury, either favorable to the prosecution or favorable to the defendant. The witness in such an incident is exercising a constitutional right personal to himself. That exercise, without more, should not be to the harm of someone else. His answer, if given, might conceivably be that he but not the defendant was guilty of the offense, or it might be that both he and the defendant were guilty; or it might relate entirely to some other offense. We agree with the opinion of Mr. Justice Field, cited in footnote 12 hereinabove.

▆▆▆ 4. Several persons who were mentioned by witnesses as being involved in the alleged gambling activities were not called as witnesses by the Government. Neither were they called by the defense. In his charge to the jury the trial judge correctly stated the rule, saying:

"There is another rule of law that may be of help to you and that is pertinent to this case. If a witness is not produced who is peculiarly available to one side or the other, then the jury has a right, if it wishes to do so—and it is entirely within the jury's discretion—to draw the inference that the testimony of that absent witness, the witness who was not called, would be unfavor-

able to the party that has failed to call the witness, unless the absence of the witness is sufficiently accounted for or explained."

But then the court went on to say:

"Bernice Franklin named certain persons who, she says, placed numbers bets with Acalotti, or collected numbers bets for him. None of them have been called by the defense to contradict her testimony. You have a right, if you choose to do so—and that is entirely within your discretion—to draw the inference that if they had been called by the defense, their testimony would be unfavorable to the defense.

"Bernice Franklin further testified that Acalotti laid off bets to Billeci and that they were in the habit of clearing their transactions in the office of one Herman Cohen. Herman Cohen has not been called by the defense to contradict the testimony of Bernice Franklin on this point; and you have a right, if you choose to do so—and it is entirely within your own discretion—to draw the inference that if Herman Cohen had been called by the defense, his testimony would have been unfavorable to the defense."

There was nothing to show that these persons were "peculiarly available" to the defendants. As a matter of fact they were not; and Cohen was in attendance under Government subpoena during part of the trial. There is authority to the effect that no inference can be drawn against a party for failure to call a witness equally available to both parties, but that rule has been criticized upon the ground that the failure to produce ought to be open to an inference against both parties, depending upon the circumstances.[13] In the present case several of the Government's witnesses were admitted participants in the alleged gambling activities, and there appears to be no basis for assuming that other participants, similarly situated, would not have testified if called. When the Government called some participants and failed to call other known participants, the inference that the latter would contradict the former is as easily drawn as is the inference that they would confirm them. For example, if Co-

13. United States v. Beekman, 2 Cir., 1946, 155 F.2d 580.

hen had been called he might have confirmed what Franklin had said, which inference would be injurious to the defense, or he might have contradicted her, which inference would be injurious to the prosecution. Since he was clearly available to either side and neither side called him, either inference as to what he would have said would be pure speculation. At least one of the potential witnesses who was not called was a police officer, and it certainly could not be inferred that he was more readily available to the appellants than to the prosecutor. In any event the law does not permit an instruction which limits the inference which can be drawn by the jury under such circumstances to an inference against the defendant.[14]

5. The trial of this case lasted several days. The jury retired for its deliberations at about noon on January 25th. Thereafter, at 5:18 p. m., the court called the jury to the box and inquired as to their progress. At 9 o'clock, p. m., the court again called the jury to the box and inquired as to progress and at this point gave the jury the so-called Allen charge. At 10:15 p. m. the court, having received a note from the foreman saying, "Your Honor, it is utterly impossible for this jury to reach a verdict," again called the jury to the box. At this time the court gave the jury an instruction which we shall discuss in a moment. The court then sent the jury to a hotel for the night. At 11:20 the next morning the court again called the jury to the box and inquired as to progress. Again at about 3 o'clock, p. m., the court called the jury to the box and announced that it had received two notes from two jurors saying that each of them had received telephone calls, the caller in one case asking the juror to be lenient to one of the defendants and the caller in the other instance offering $300 for a verdict of not guilty. The court inquired as to what progress the jury was making, and, when the foreman replied, "No progress," the court instructed the jury, quoting from Horning v. District of Columbia,[15] which instruction we shall discuss in a moment. At 5:45 p. m. the court again called the jury into the courtroom and inquired as to progress and, upon the foreman's stating, "Yes; we have made progress," sent the jury to dinner. At 11:30 the jury returned its verdict. The verdict was returned 35½ hours after the jury first retired from the courtroom.

■■ We return now to the first of the two instructions to which we have referred. This was given when the foreman advised the court that it was impossible for the jury to reach a verdict. The court said, in part:

"Ladies and gentlemen of the jury, I am not convinced that it is impossible for you to reach a verdict. It may seem so, perhaps. But you must make additional endeavors. * * * If you believe from the testimony that the defendants have committed the crime of which they are charged, then you must find a verdict of guilty, irrespective of whether the witnesses appealed to you or not. On the other hand, if you do not believe that the defendants have committed the crime of which they are charged, then you must find a verdict of not guilty.

"You must confine yourselves strictly to the question and ask yourself honestly, 'Do I believe from the evidence I have heard at this trial that the defendants have committed this crime?' If you answer the question 'Yes,' you must find the defendants guilty. If your answer is 'No,' then you must find them not guilty. * * *'" That statement is not the law. The law is that if the jury believes beyond a reasonable doubt that the defendant has committed the alleged offense it should find a verdict of guilty, but if there be a reasonable doubt in the minds of the jurors they must acquit. The instruction given was error.

6. The second instruction to which we have referred was given, as we have indicated, during the afternoon of the second

14. Egan v. United States, 1923, 52 App. D.C. 384, 287 F. 958; Rostello v. United States, 7 Cir., 1929, 36 F.2d 899; Moyer v. United States, 9 Cir., 1935; 78 F.2d 624.

15. 1920, 254 U.S. 135, 41 S.Ct. 53, 65 L. Ed. 185.

day of the jury's deliberation. The court said:

"I am going to make some additional observations to you, ladies and gentlemen. I pointed out to you in my charge that the Government has offered certain evidence. I called your attention to the fact that the defendants personally did not have to take the stand, and that no inference could be drawn against them from their failure to take the stand themselves, because that was one of their constitutional rights.

"However, I call your attention to the fact that they had a right to call other witnesses and that they called none, to contradict the testimony of the Government witnesses, and that therefore the testimony of the Government witnesses stands uncontradicted.

"I am going to make some additional remarks to you that were made by a judge in another case, where a somewhat similar situation arose, and the making of these remarks was approved by the Supreme Court of the United States in an opinion written by a great judge, Mr. Justice Holmes. For the sake of the record I will say I refer to the case of Horning against the District of Columbia, 254 U.S. 135 [41 S.Ct. 53, 65 L.Ed. 185].

" 'In a criminal case the court cannot peremptorily instruct the jury to find the defendant guilty. If the law permitted it, I would do so in this case. It is your duty under your oaths as jurors to accept as correct and be governed by the exposition of the law which I give you.

" 'In conclusion I will say to you that a failure by you to bring in a verdict in this case can arise only from a willful and flagrant disregard of the evidence and the law as I have given it to you, and a violation of your obligation as jurors.'

"You may retire for further deliberation."

The quotation from the Horning case is, in the present context, a misinterpretation of that case. That case arose under a statute which prohibited doing business as a pawnbroker in the District of Columbia without a license. The defendant, prior to that time, had been a pawnbroker in the District but, upon enactment of the statute, removed his headquarters to Virginia. He posted notices at his former offices that no applications for loans would be received or examination of pledges made there, but he maintained a free automobile service from there to his place in Virginia and also made available a dime messenger service to and from the Virginia place. When a loan was paid off the borrower could receive back his pledge at the Washington office. The Government presented witnesses who testified to the foregoing facts, and the defendant then took the stand and testified to the same facts. The question in the case, therefore, was simply whether the conduct of a business in the manner described was or was not a violation of the statute. The court instructed the jury that, if the testimony of the witnesses, including the defendant, in which there was no dispute, was true, the defendant was engaged in business in the District of Columbia in violation of the statute. That was a simple statement of law. The judge told the jury that the only question for them to determine was whether they believed the concurrent testimony of the witnesses for the Government and the defendant. The jury retired but failed to bring in a verdict. The opinion of the Supreme Court described what then happened as follows: "The next day they were recalled to Court, and were told that there really was no issue of fact for them to decide; that they were not warranted in capriciously saying that the witnesses for the Government and the defendant were not telling the truth; that the course of dealing constituted a breach of the law; that it was their duty to accept this exposition of the law; that, in a criminal case, the Court could not peremptorily instruct them to find the defendant guilty, but that, if the law permitted, he would. The Court added that a failure to bring in a verdict could only arise from a flagrant disregard of the evidence, the law, and their obligation as jurors. On an exception being taken, the judge repeated that he could not tell them in so many words to find the defendant guilty, but that what he said amounted to that; that the facts proved were in accord with

the information, and that the Court of Appeals had said that that showed a violation of law." [16]

In its opinion the Supreme Court said, among other things: "The facts were not in dispute, and what he [the trial judge] did was to say so, and to lay down the law applicable to them. In such a case obviously the function of the jury, if they do their duty is little more than formal." [17] The decision of the Supreme Court rested upon the circumstances of the case, as did the prior decision of this court, [18] which the Supreme Court affirmed. The circumstances were that the testimony of both sides was in agreement and the only question actually open was one of law. Even so, the Chief Justice, Mr. Justice Day, Mr. Justice Brandeis, and Mr. Justice McReynolds dissented, on the ground that the trial judge had usurped the province of the jury.

In the case at bar, although no evidence was presented by the defense, there was a vigorous disagreement as to the facts, strenuously pressed by cross examination and by argument. Therefore the doctrine announced in the Horning case does not apply. In a case in which all the evidence is given by witnesses presented by the Government but the defense does not concede that the essential evidence is true, a trial judge has no more right to say to the jury, "A failure by you to bring in a verdict in this case can arise only from a willful and flagrant disregard of the evidence and the law as I have given it to you, and a violation of your obligation as jurors," than he would have to say it in a case in which contradictory evidence is affirmatively offered by the defendant. [19] The jury is the sole judge of the credibility of the witnesses. And even if all the evidence presented be believed it might not be persuasive beyond a reasonable doubt. The instruction given by the trial court was error.

7. Appellants say in their brief and argument before us that in instructing the jury the trial judge, by intonations and gestures, emphasized principles beneficial to the prosecution and de-emphasized those things which he said of benefit to the defendants. They say that he frequently leaned toward the jury, gestured in an emphatic manner with his hand, and raised his voice when he was reciting those principles which tended to produce a verdict of guilty, but that when he told the jurors they could return a verdict of not guilty his remarks were barely audible. When objections to these alleged actions by the trial court were made by the appellants, the judge replied, "Well, of course, all that was dealt with by the Court of Appeals in the Vinci case."

We pointed out in the Vinci case [20] that the trial court may not do by indirection that which it may not do directly; that it may not coerce, or attempt to coerce, a jury by gesture any more than it may do so by words; that it may not translate by intonation a properly worded charge into an improperly understood one. But we pointed out that an appellate court cannot act upon representations made to it in briefs and upon argument; that if the trial judge conducts himself erroneously to the detriment of the defendants it is incumbent upon counsel to record such action at the time. In the case at bar counsel did raise the point before the trial court. Counsel there said:

"I would like also to take exception—and I say this with all deference to Your Honor—to what I consider certain intonations that were indulged by Your Honor, particularly when you were discussing certain principles of law. I think that they were quite apparent to the jury listening intent-

16. Supra at 254 U.S. 138, 41 S.Ct. 54, 65 L.Ed. 186.

17. Ibid.

18. District of Columbia v. Horning, 1918, 47 App.D.C. 413.

19. See Dinger v. United States, 8 Cir., 1928, 28 F.2d 548; United States v. Gollin, 3 Cir., 1948, 166 F.2d 123, certiorari denied, 1948, 333 U.S. 875, 68 S.Ct. 905, 92 L.Ed. 1151.

20. Vinci v. United States, 1947, 81 U.S. App.D.C. 386, 159 F.2d 777.

ly as they were to Your Honor's instruction, and I think they were inescapably calculated to carry out the defeat of the ultimate principle of the law that is involved in the case. And on that basis I would like at this time, on behalf of the defendant Lewis, to take an exception to your entire charge."

The description thus given of the conduct of the judge at the time it occurred falls far short of the description now given it by counsel. It was then said merely that certain intonations were thought by counsel to be quite apparent to the jury. Counsel's present description is that the gestures and intonations were so emphatic as to twist the meaning of the charge as worded and to tend to coerce a reluctant jury.

█ It is our view that if the intonations and gestures of a trial judge are erroneously detrimental to a defendant in a criminal case it is the duty of counsel to record fully and accurately, at the time and on the record, although not in the hearing of the jury, what has transpired. In such a situation it is as much his duty to make that record as it is his duty to record his objections to the charge, as the Rules require,[21] before the jury leaves the room. If the representations then made by counsel are not accurate, the court may say so. But if there is a serious question as to whether the jury may have derived some

unintended meaning or have been likely to infer erroneously from the gestures and intonations of the judge, he should emphatically instruct them so as to remove any possible erroneous impression from their minds. If a difference develops between judge and lawyer as to what has happened, the procedure upon exceptions before there were court reporters is available.

Since these cases must go back for new trial several features of the present record require us to state again the rule governing a federal trial judge in commenting upon evidence. It has been stated many times by many courts and many judges.[22] This court stated it in Smith v. United States,[23] again in Vinci v. United States, supra, and more recently in Sullivan v. United States.[24]

█ A federal trial judge in a criminal case is not an inert figure. He is not a mere moderator. Besides his own exclusive functions of conducting the trial and declaring the applicable law, he may guide and assist the jury in its consideration of the evidence. The purpose of his comment is to aid, through his experience, the inexperienced laymen in the box in finding the truth in the confusing conflicts of contradictory evidence. In exceptional cases he may even express his opinion upon the evidence, or phases of it. But there is a constitutional line across which he cannot go.

21. Fed. R. Crim. P., 30, 18 U.S.C.A.

22. Quercia v. United States, 1933, 289 U.S. 466, 53 S.Ct. 698, 77 L.Ed. 1321; Bollenbach v. United States, 1946, 326 U.S. 607, 66 S.Ct. 402, 90 L.Ed. 350; Bihn v. United States, 1946, 328 U.S. 633, 66 S.Ct. 1172, 90 L.Ed. 1484; United States v. Murdock, 1933, 290 U.S. 389, 54 S.Ct. 223, 78 L.Ed. 381; Hicks v. United States, 1893, 150 U.S. 442, 14 S.Ct. 144; 37 L. Ed. 1137; Starr v. United States, 1894, 153 U.S. 614, 14 S.Ct. 919, 38 L.Ed. 841; Hickory v. United States, 1896, 160 U.S. 408, 16 S.Ct. 327, 40 L.Ed. 474; United States v. Meltzer, 7 Cir., 1938, 100 F.2d 739, opinion by Judge Evans; United States v. Marzano, 2 Cir., 1945, 149 F.2d 923, opinion by Judge L. Hand; United States v. Gollin, 3 Cir., 1948, 166 F.2d 123, opinion by Judge McLaughlin, certiorari denied, 1948, 333 U.S. 875, 68 S.Ct. 905, 92 L.Ed. 1151; Williams v. United

States, 9 Cir., 1937, 93 F.2d 685, opinion by Judge Garrecht; Boatright v. United States, 8 Cir., 1939, 105 F.2d 737, opinion by Judge Gardner; Wheatley v. United States, 4 Cir., 1946, 159 F.2d 599, opinion by Judge Soper; Minner v. United States, 10 Cir., 1932, 57 F.2d 506, opinion by Judge Phillips; Weare v. United States, 8 Cir., 1924, 1 F.2d 617, opinion by Judge Kenyon; Malaga v. United States, 1 Cir., 1932, 57 F.2d 822, opinion by Judge Wilson; Hunter v. United States, 5 Cir., 1932, 62 F.2d 217, opinion by Judge Bryan; Sturcz v. United States, 3 Cir., 1932, 57 F.2d 90, opinion by Judge Davis; Garber v. United States, 6 Cir., 1944, 145 F.2d 966, opinion by Judge Martin; Smith v. United States, 1924, 55 App.D.C. 117, 2 F.2d 919, opinion by Judge Robb.

23. 1924, 55 App.D.C. 117, 2 F.2d 919.

24. 1949, 85 U.S.App.D.C. 409, 178 F.2d 723.

The accused has a right to a trial by the jury. That means that his guilt or innocence must be decided by twelve laymen and not by the one judge. A judge cannot impinge upon that right any more than he can destroy it. He cannot press upon the jury the weight of his influence any more than he can eliminate the jury altogether. It is for this reason that courts have held time and again that a trial judge cannot be argumentative in his comments; he cannot be an advocate; he cannot urge his own view of the guilt or innocence of the accused. Of course he may direct judgment of acquittal under proper circumstances.

 Moreover, other indestructible principles of our criminal law are pertinent to the comment of a judge upon the evidence. An accused is presumed to be innocent. Guilt must be established beyond a reasonable doubt. All twelve jurors must be convinced beyond that doubt; if only one of them fixedly has a reasonable doubt, a verdict of guilty cannot be returned. These principles are not pious platitudes recited to placate the shades of venerated legal ancients. They are working rules of law binding upon the court. Startling though the concept is when fully appreciated, those rules mean that the prosecutor in a criminal case must actually overcome the presumption of innocence, all reasonable doubts as to guilt, and the unanimous verdict requirement.

The public interest requires that persons who have committed crimes be convicted of them. But the responsibility for producing the evidence which will persuade twelve jurors of guilt beyond a reasonable doubt is upon the prosecutor. It is a serious public responsibility, but it is upon the prosecutor and upon him alone. The judge has no part in that task. The prosecutor represents society in the prosecution. The attorney for the defense represents the accused. The judge is a disinterested and objective participant in the proceeding. "Prosecution and judgment are two quite separate functions in the administration of justice; they must not merge." [25]

 The difference between assisting the jury, which is a duty of a federal judge, and encroaching upon its responsibilities, which is forbidden, has been developed at great length many times, as we have pointed out. When a federal judge comments upon evidence by expressing his opinion upon phases of it, he is treading close to the line which divides proper judicial action from the field which is exclusively the jury's. Therefore he must make it unequivocally clear to the jurors that conclusions upon such matters are theirs, not his, to make; and he must do so in such manner and at such time that the jury will not be left in doubt; references in some remote or obscure portion of a long charge will not suffice for the purpose.

After a jury has returned a verdict of guilty the defendant is no longer the accused but is the convicted. It is at that point, and not until that point, that punishment becomes a function of the judge.

It is a serious thing for an appellate court to reverse convictions in criminal cases. But the controlling importance is that the law be followed. The rules of law applicable to the function of the judge in a criminal trial by a jury are well settled. No matter what the impulse may be to transgress or evade them under provocative circumstances, they must be observed. This is basic, without exception, and compulsory.

The judgment of the District Court is reversed.

---

25. Judge Learned Hand in United States v. Marzano, 2 Cir., 1945, 149 F.2d 923, 926.