UNITED STATES of America, Plaintiff-Appellee,

v.

Floyd WILLIAMS, Defendant-Appellant.

No. 13522.

United States Court of Appeals Seventh Circuit.

Jan. 2, 1963.

Thomas P. Sullivan, Chicago, Ill., for appellant.

James P. O'Brien, U. S. Atty., Robert S. Atkins, Asst. U. S. Atty., Chicago, Ill. (John Peter Lulinski, Asst. U. S. Atty., of counsel), for appellee.

Before CASTLE and SWYGERT, Circuit Judges, and GRUBB, District Judge.

CASTLE, Circuit Judge.

Floyd Williams, the defendant-appellant, was convicted following a jury trial of unlawful sales of narcotics,[1] of unlawfully receiving, concealing and facilitat-

---

1. 26 U.S.C.A. § 4705(a).

ing the transportation and concealment of narcotics after unlawful importation,[2] and of conspiracy to violate Federal narcotic laws[3]. A co-defendant, Barney Woods, also known as "Sarge", the alleged co-conspirator, had previously entered a plea of guilty. The defendant-appellant was sentenced to imprisonment for fifteen years.

The contested issues presented by the defendant's appeal are:

(1) Whether the District Court erred in refusing to grant defendant's motion for judgment of acquittal at the close of the government's proof.

(2) Whether the court erred in allowing a government witness to testify concerning conversations he had with the alleged co-conspirator.

(3) Whether the court erred in permitting a federal narcotics agent to testify as to the content of telephone conversations between the defendant and a government informer which the agent heard through the amplifier of a tape recorder which was connected to an induction coil upon which the telephone was placed.

(4) Whether the court erred in permitting the government agent to refresh his recollection with a memorandum he prepared from tape recorded reproductions of the defendant's conversations with the informer.

(5) Whether the court erred in permitting a government informer to be called as a court's witness and in the presence of the jury refuse to testify

■ Defendant's motion of acquittal tested whether substantial evidence, taken in the light most favorable to the government, tends to show the defendant is guilty beyond a reasonable doubt. As was observed by Judge Duffy in United States v. Yeoman-Henderson, Inc., 7 Cir., 193 F.2d 867, 869, the rule is well stated in Curley v. United States, 81 U.S.App.D.C. 389, 160 F.2d 229, 232:

> "The true rule, therefore, is that a trial judge, in passing upon a motion for directed verdict of acquittal, must determine whether upon the evidence, giving full play to the right of the jury to determine credibility, weigh the evidence, and draw justifiable inferences of fact, a reasonable mind might fairly conclude guilt beyond a reasonable doubt."

■■ We, therefore, consider "only the evidence favorable to the verdict and such reasonable inferences as the jury may have drawn therefrom". United States v. O'Brien, 7 Cir., 174 F.2d 341, 343. And, so viewing the record, we are of the opinion that there is substantial evidence which amply supports the District Court's denial of defendant's motion for judgment of acquittal.

The record discloses evidence from which the jury could have found that within an hour after narcotics agent Jackson purchased heroin from co-defendant Woods (sometimes called "Sarge") Jackson had a telephone conversation with the defendant and complained to him about the quality of the drug he had just received from Woods. According to Jackson, the defendant told him "he only dealt in high quality stuff and if I would add 3 or 4 spoons of milk sugar to this package I would get a good ounce of heroin" and that "the next time I came around to buy something, he would sweeten up the package by adding a little extra". This conversation took place January 19, 1960. The purchase from Woods had been made after Neal, an informer in the employ of the Federal Bureau of Narcotics, had placed a telephone call to the defendant's listed number and was observed entering and leaving the building at the address for which the telephone was listed. Neal and Jackson had then proceeded to Woods' apartment where the purchase was made.

On the following day when Jackson called Woods and expressed a desire to

2. 21 U.S.C.A. § 174.

3. 18 U.S.C.A. § 371.

purchase an ounce of heroin he also asked Woods if he would "sweeten up the ounce" as Jackson had been promised. Woods replied that he would "have to check with the big boy". Later that evening Woods advised Jackson that he had heard from the "big boy" and had the "stuff". Jackson then picked up a package containing heroin from Woods and paid him $350.-00. In response to Jackson's inquiry, Woods stated that Jackson had "an ounce of the good stuff plus the sweetening".

Neal brought Jackson to the defendant's apartment on January 21st but only Neal was permitted to enter and Jackson remained in the hallway. A short time later when Neal telephoned the defendant Neal was reprimanded for bringing someone with him, the defendant stating "I don't meet anyone. * * * There are no exceptions".

Late on February 3rd Neal telephoned the defendant and told him "I want two". The defendant told him to call back in the morning—he had been unable to locate his man "Sarge". Early on February 4th Neal telephoned the defendant and pursuant to arrangements then made Neal met the defendant at his residence and they both proceeded to Woods' residence. When they left, Neal boarded a bus and rode to a location where he met narcotics agent Dayle and turned over to him a package containing heroin. Neal had been supplied with funds to make the purchase, and searched both before and after he met with the defendant.

On the afternoon of February 16th, Neal again telephoned the defendant and told him "my boy" had been unable to telephone "Sarge" because the latter's telephone had been disconnected. He inquired if he should tell him to "go up there and see Sarge, or what". The defendant replied that "Sarge" had got "shakey" and "cleaned up". He inquired if Neal could "handle his man", stating that he "can't meet anybody". Neal telephoned the defendant later that evening and asked if everything was all right. Defendant replied that it was and asked when Neal could come over. They arranged to meet in a restaurant. Neal after being searched and supplied with funds kept the appointment. He was observed seated at a counter next to the defendant and having his hand in defendant's coat pocket. Neal rejoined agent Dayle and handed him a package containing heroin. Later that evening Neal telephoned the defendant and told him "his man" had complained about the quality of the heroin just purchased. The defendant replied "I can't understand, it is the same but I will tell you, we will do something for him. You know I told you about tomorrow. I will get the regular * * *. Tell him we will do something for him tomorrow"

The defendant contends that the proof is insufficient to sustain a conviction on either the substantive offenses or the conspiracy charge. He urges that there is no evidence which connects him with any of the sales of narcotics proved by the government. He equates the evidence here with the type of situation involved in Panci v. United States, 5 Cir., 256 F.2d 308; Ong Way Jong v. United States, 9 Cir., 245 F.2d 392, and Evans v. United States, 9 Cir., 257 F.2d 121. In so doing the defendant fails to recognize the inferences the jurors were reasonably warranted in drawing from the testimony of agent Jackson relating to his telephone conversation with the defendant on January 19, 1960, and the effect of those inferences upon the jury's appraisal of the events which subsequently transpired—including Jackson's conversation with Woods and the statements made by the defendant in his conversations with Neal. It is true, of course, that the record reveals no personal and direct contact between the government agents and the defendant but there was substantial evidence from which it could be inferred that the defendant supplied the narcotic for which Jackson paid Woods, participated in a subsequent sale to Neal, and made the sale to Neal after Woods had "cleaned up". In our opinion there was substantial evidence supporting reasonable inferences that the defendant participated in the illegal business; that Woods was, in fact, only the connection

between defendant and the ultimate purchaser, and that both the defendant and Woods were actively engaged in a conspiracy to sell and facilitate the transportation and concealment of narcotics as charged. Cf. United States v. Iacullo, 7 Cir., 226 F.2d 788, 789; United States v. Maroy, 7 Cir., 248 F.2d 663; United States v. Pinna, 7 Cir., 229 F.2d 216 and United States v. Pisano, 7 Cir., 193 F.2d 355, 31 A.L.R.2d 409. There was ample evidence for the jury to conclude that the defendant and Woods were working together in violation of the federal narcotic laws—the existence of a conspiracy ordinarily can be established only "by inference from evidence of relationships and conduct and other probative circumstances". Phelps v. United States, 8 Cir., 160 F.2d 858, 867. And it was only after a *prima facie* case of conspiracy had been established that the trial judge permitted agent Jackson to testify concerning the conversation he had with Woods in the absence of the defendant.

■■ The content of the telephone conversations between informer Neal and the defendant was testified to by agent Dayle. Dayle was permitted, over defendant's objection, to refresh his recollection of these conversations from a memorandum he had prepared from a tape recorded reproduction of the same. Dayle had listened to each of the conversations through the amplifier of a tape recorder which was connected to an induction coil upon which the telephone instrument rested when Neal and the defendant conversed. By impulse, the sounds being received and transmitted by the telephone instrument were transmitted to the tape recorder's amplifier. The defendant contends that the court erred in overruling defendant's objection to the use of the memorandum by Dayle to refresh his recollection. He argues that the tape recording of the conversations was in violation of the provisions of 47 U.S.C.A. § 605[4] and in contravention of the defendant's constitutional rights under the Fourth Amendment; that such use at the trial violated the due process guarantee of the Fifth Amendment. We find no merit in such contentions. Here there was no "interception" of telephonic communication within the scope or intendment of the statute. Ferguson v. United States, 10 Cir., 307 F.2d 787. Cf. United States v. White, 7 Cir., 228 F.2d 832; United States v. Bookie, 7 Cir., 229 F.2d 130. And, defendant's reliance upon Silverman v. United States, 365 U.S. 505, 81 S.Ct. 679, 5 L.Ed.2d 734, is misplaced. There was no invasion of defendant's person or habitation—and no intrusion into a constitutionally protected area. Each party to a telephone conversation takes the risk that the other party may allow another to overhear the conversation. Rathbun v. United States, 355 U.S. 107, 111, 78 S.Ct. 161, 2 L.Ed.2d 134. That such eavesdropping is accomplished with the aid of a tape recorder, as here used, does not serve to distinguish Rathbun. Nor does it precipitate any constitutional infirmity which forbids the use of evidence so obtained. And, the consenting party's breach of etiquette, or breach of the trust and confidence the other party reposed in him, is no basis for exclusion of such evidence.

We conclude that the testimony of the eavesdropping agent was subject to no statutory or constitutional infirmity and was admissible. The District Court, therefore, did not err in overruling the defendant's objection to the use of the memorandum by the witness to refresh his recollection.

■ The defendant urges that the attempted examination of Neal as a court's witness before the jury and his refusal to testify, of which the government was forewarned by Neal's earlier declaration that he did not desire or intend to testify, was grossly prejudicial to the defendant and deprived him of a fair trial. Neal, the informer in the employ of the govern-

---

4. Section 605 of the Federal Communications Act of 1934:
"* * * no person not being authorized by the sender shall intercept any communication and divulge or publish the existence, contents, substance, purport, effect, or meaning of such intercepted communication to any person; * * *."

ment, testified before the grand jury which returned the indictment but at the time the case was set for trial he did not appear and a warrant was issued for his arrest. He was brought in the day before the trial commenced. He said he was not going to testify;[5] told the prosecutor that he did not want to testify. He did not, however, indicate that he would assert a constitutional right against self-incrimination as a basis for refusing to testify—nor did he do so. The prosecutor requested that Neal be called as the court's witness and that the government be permitted to cross-examine. Neal was so called and questioned in the presence of the jury. He gave his name but stated: "I am not here as a witness in this case at all. I didn't come in here to be a witness in this case at all, none whatsoever". He refused to answer when asked if he knew the defendant. The court directed him to answer and he again refused. In reply to the court's inquiry he stated that he refused to answer any questions put to him by the prosecutor.[6] The jury was instructed that such refusal on the part of Neal to testify should not be considered as evidence for or against either the defendant or the government.

The witness asserted no constitutional privilege against self-incrimination. But even where the refusal to testify has been so predicated it has been held (Billeci v. United States, 87 U.S.App.D.C. 274, 184 F.2d 394, 398, 24 A.L.R.2d 881) that:

"We think that the correct rule is that, when a witness declines to answer a question on the ground that his answer would tend to incriminate him, that refusal alone cannot be made the basis of any inference by the jury, either favorable to the prosecution or favorable to the defendant. The witness in such an incident is exercising a constitutional right personal to himself. That exercise, without more, should not be to the harm of someone else. His answer, if given, might conceivably be that he but not the defendant was guilty of the offense, or it might be that both he and the defendant were guilty; or it might relate entirely to some other offense".

See also: Namet v. United States, 1 Cir., 301 F.2d 314, certiorari granted 83 S.Ct. 115 in which the witnesses who invoked the Fifth Amendment had pleaded guilty in a similar but separate case involving the same crime.

And, here there was no repeated questioning of a witness under indictment for the same offense, eliciting repeated claims of the privilege against self-incrimination, as was the case in People v. Bennett, 413 Ill. 601, 110 N.E.2d 175, relied upon by the defendant. The interrogation was limited and in our opinion the cautionary instruction protected the rights of the defendant. United States v. Shaffer, 7 Cir., 291 F.2d 689, 694; United States v. Magin, 7 Cir., 280 F.2d 74, 79. We see in this instance no prejudicial error requiring reversal—no deprivation of the defendant's right to a fair trial.

Mr. Thomas P. Sullivan of the Chicago bar represented the defendant in this appeal by appointment of this Court. We are appreciative of the service so rendered by Mr. Sullivan and commend him for the able presentation of the defendant's case.

The judgment order of the District Court is affirmed.

Affirmed.

5. This statement was made before the court and the trial judge stated that the court could only find that out when the witness was put on the stand to testify.

6. Thereafter, out of the presence of the jury, the witness was found in contempt and sentenced therefor.