UNITED STATES of America,
Plaintiff-Appellee,

v.

Gayle Randal FARRINGTON, Defendant-
Appellant.

No. 17483.

United States Court of Appeals
Sixth Circuit.

Feb. 8, 1968.

Norman E. McIntyre, Cleveland, Ohio, Vanik, Monroe & McIntyre, Cleveland, Ohio, on brief, for appellant.

Clarence Rogers, Jr., Cleveland, Ohio, Merle M. McCurdy, U. S. Atty., Nathaniel R. Jones, Asst. U. S. Atty., Cleveland, Ohio, on brief, for appellee.

Before WEICK, Chief Judge, and CELEBREZZE and COMBS, Circuit Judges.

COMBS, Circuit Judge.

A jury found the appellant, Farrington, guilty on five counts of an indictment charging him with making and presenting, or causing to be made and presented to the Dime Bank, Akron, Ohio, false completion certificates in connection with Federal Housing Administration loans. The applicable statute is 18

U.S.C. § 1010.[1] Appellant was sentenced to five years imprisonment.

It was charged in the indictment that the completion certificates contained false statements that the borrowers had not been given or promised any rebate, bonus or commission as an inducement to apply for the loan when in fact appellant had promised them $50.00 per name for each referred prospect and $75.00 if the prospect made a purchase.

The appellant owned Sterling Builders, a company specializing in home improvement construction. He operated in close connection with the Red Seal Company which distributed products used in appellant's construction work. His modus operandi was generally as follows. He would enter into a contract for home improvement with a given buyer-borrower and write the contract on Red Seal forms. The borrower would then sign the application for credit for a property improvement loan and later a certificate of completion.

The credit application contained blanks for the listing of all of applicant's fixed financial obligations. On the certificate of completion there appeared the following:

"The borrower has not been given or promised a cash payment or rebate nor has it been represented to the borrower that he will receive a cash bonus or commission on future sales as an inducement for the consummation of this transaction."

After the execution of the various documents by the applicant, the appellant would carry the documents to Parker, local sales manager for Red Seal, who in turn would deliver them to the Dime Bank of Akron, Ohio. It was the policy of the bank not to make any loan or extend any credit until it received the completion certificate. Records of loans out and payments in were kept by the bank. The bank forwarded information concerning the loans to the Federal Housing Administration which insured their payment. In case of default by the borrowers, the Federal Housing Administration absorbed ninety per cent of the loss and the financial institution ten per cent.

At least two of the borrowers testified they had informed appellant of previous obligations which he did not list on their credit applications. All of the borrowers signed their contracts with the understanding that they were to receive from appellant bonus payments for customer references; nearly all such promised bonuses were paid. Several of the borrowers testified they had signed completion certificates before construction work was completed; some stated they had not realized what they were signing; and some said they were induced to sign by appellant's statement that they could not receive bonus payments until the completion certificates were executed.

The appellant relies on three grounds for reversal: (1) the Government failed to prove that the completion certificates were delivered to the Dime Bank as alleged in the indictment; (2) introduction of incompetent evidence and improper comments by the judge in his charge to the jury; (3) appellant was deprived of the opportunity to employ counsel of his choice.

Appellant vigorously insists that he was entitled to a judgment of acquittal

1. 18 U.S.C. § 1010. Whoever, for the purpose of obtaining any loan or advance of credit from any person, partnership, association, or corporation with the intent that such loan or advance of credit shall be offered to or accepted by the Federal Housing Administration for insurance, or for the purpose of obtaining any extension or renewal of any loan, advance of credit, or mortgage insured by such Administration, or the acceptance, release, or substitution of any security on such a loan, advance of credit, or for the purpose of influencing in any way the action of such Administration, makes, passes, utters, or publishes any statement, knowing the same to be false, or alters, forges, or counterfeits any instrument, paper, or document, or utters, publishes, or passes as true any instrument, paper, or document, knowing it to have been altered, forged, or counterfeited, or willfully overvalues any security, asset, or income, shall be fined not more than $5,000 or imprisoned not more than two years, or both.

because the Government failed to prove that the completion certificates upon which the indictment was based were presented to the Dime Bank. The certificates as to Counts 3 and 4 were not offered in evidence in any form and there was no other evidence that they were ever presented to any bank. With this gap in the Government's case there was not sufficient evidence to submit to the jury on Counts 3 and 4 of the indictment.

 A somewhat different question is presented in regard to Counts 1, 2, and 5. The Government relied on photostatic copies of the completion certificates to prove these three counts and, if the photostatic copies can be considered as having been properly introduced, there is evidence from which it can be inferred that the certificates were presented to the Dime Bank. The photostatic copies were introduced without any explanation as to why the originals were not offered and in the absence of such explanation were not properly admissible. Under the best evidence rule the contents of an available written document must be proved by the introduction of the document itself unless it is shown that it is unavailable for some reason other than the serious fault of the proponent. United States v. Alexander, 326 F.2d 736 (4th Cir. 1964); Ahlstedt v. United States, 315 F.2d 62 (5th Cir.), cert. denied, 375 U.S. 847, 84 S.Ct. 101, 11 L.Ed.2d 74 (1963).

 It is noted, however, that although appellant's counsel made pro forma objection when the photostatic copies were introduced he did not state the grounds for his objection as required by Rule 51, Federal Rules of Criminal Procedure. In view of a prior discussion about the introduction of photostatic copies of other written documents, the court had the right to assume that the objection was not based on this point. We conclude that the objection to the introduction of photostatic copies was waived

 The evidence complained of is in regard to financial loss sustained by the Government and by the individual mortgagors resulting from subsequent foreclosures of some of the mortgages. The judge stated in his instructions to the jury that financial loss, either to the Government or to the mortgagors, was not an element of the offense and had no bearing on the case. We agree. The difficulty is that, even though he considered this evidence to be extraneous to any issue in the case, he permitted it to be introduced and unduly emphasized it in his instructions. For example, the instructions contained the following:

"Suffice it to say there are six counts, and in the Merriner case there was a loss to the Government of $203.65, and in the Steiner case there was a loss to the Government of $2,382.79. Either a hundred per cent or 90 per cent. However, loss does not constitute any element of this offense.

"You understand that in these matters in which the Government insures these loans, that when there is a loss on the loan the Government then sustains 90 per cent and the bank sustains 10 per cent. If the Government loses 90 per cent, then the people have lost 90 per cent because the Government used the people's money. If the bank loses 10 per cent, then the depositors lose 10 per cent because the bank was using the depositors' money.

\* \* \* \* \* \*

"Thus the bank's money was loaned, and the Government insured the repayment of the loan to the bank up to 90%, as we have mentioned. You have heard testimony here to the effect that when the borrower does not repay the loan, then the Government pays for 90% of the loss, and the bank loses 10% of the loss.

\* \* \* \* \* \*

"So insofar as the crimes alleged by the Government here are concerned, the crime itself does not necessarily include the fact that a loss occurred—meaning, the crime here claimed may well be complete if there was never a loss, as long as there was a fraudulent statement presented for the purpose mentioned. The fact of losses here, or the various results and conditions occasioned to the borrower, which

have been in evidence, are all offered for whatever bearing it has in your minds on the final questions presented here. The fact that one of these parties went into bankruptcy, and others later had to refinance their homes to hold their homes, does not constitute any necessary part of this offense. These ultimate results were explanatory only as bearing on the entire matter and the entire question, but did not constitute any element of the crime here charged. Those elements we have related to you.

\* \* \* \* \* \*

"Do you feel that these people felt that they were buying more than they could afford here, and if so, what induced them to buy more than they could afford? You have seen all these people, these borrowers. All ordinary middle-class Americans, were they not, trying to make a living in '60, and in '60 having a very tough time trying to do that? Are they not all hardworking, honest people, think you?"

 We are of the opinion that the introduction of evidence of loss by the Government and by the individuals involved, and the judge's repetitive reference to it requires reversal even though the jury was told that loss did not constitute any element of the offense. The evidence of subsequent financial loss to the parties was clearly incompetent and it is at least doubtful whether the court's admonition was sufficient to eliminate from the minds of the jurors this element of the case.

 The judge's instructions were more argumentative in other respects than is permitted under the rule laid down in such cases as Quercia v. United States, 289 U.S. 466, 53 S.Ct. 698, 77 L. Ed. 1321 (1933); Frantz v. United States, 62 F.2d 737 (6th Cir. 1933); Sandals v. United States, 213 F. 569 (6th Cir. 1914); Billeci v. United States, 87 U.S. App.D.C. 274, 184 F.2d 394, 24 A.L.R.2d 881 (1950).

It can be said here as it was in *Frantz*, supra, that "the District Judge was quite evidently convinced of the guilt of the accused, and took no pains to avoid disclosure of this fact to the jury."

On another trial of this case evidence as to financial loss by the Government and by the individual mortgagors should not be permitted, and the judge will be guided in his charge to the jury by the opinion of this Court in United States v. Porter, 386 F.2d 270, decided December 7, 1967.

In view of the disposition of the case which we have indicated, appellant will have an opportunity to employ counsel of his own choice on another trial. It is unnecessary therefore to decide whether he has heretofore been deprived of that right.

Reversed and remanded for proceedings consistent with this opinion.