347 F.2d 425
 65-1 USTC P 9350
 UNITED STATES of America, Plaintiff (Appellee),
v.
William B. ENGLAND, Also Known as William Benjamin England,
Defendant(Appellant).
UNITED STATES of America, Plaintiff (Appellee),
v.
William Bernard ENGLAND, Also Known as William B. England,
Jr., Defendant(Appellant).
 Nos. 14742, 14743.
 United States Court of Appeals Seventh Circuit.
 April 12, 1965, Rehearing Denied June 7, 1965 (En Banc),
Addendum July 6,1965.
 
 1
 Wayne H. Bigler, Jr., Clayton, Mo., John J. Hoban, East St. Louis, Ill., for appellant.
 
 
 2
 Louis F. Oberdorfer, Asst. Atty. Gen., Joseph M. Howard, Atty. Tax Div., Dept. of Justice, Washington, D.C., Carl W. Feickert, U.S. Atty., East St. Louis, Ill., for appellee.
 
 
 3
 Before DUFFY and SWYGERT, Circuit Judges, and GRANT, District Judge.
 
 
 4
 GRANT, District Judge.
 
 
 5
 The indictment in this case charged William B. England and his son, William Bernard England, in one count with willfully attempting, during the period from about June 27, 1955, to the date of the indictment, November 27, 1962, to evade and defeat the payment of income taxes owed by the father[1] for the years 1944, 1945, and 1946, 'duly assessed' on February 4, 1955, by concealing and attempting to conceal the nature and extent of real estate owned by the father and by making false statements concerning the father's interest in certain real estate, in violation of Section 7201 of the Internal Revenue Code of 1954 and of Title 18, United States Code, Section 2.[2]
 
 
 6
 After trial by jury, both appellants were found guilty. The father (William B. England, also known as William Benjamin England, and hereafter referred to as 'England Senior') was sentenced to imprisonment for three years. The son (William Bernard England, also known as William B. England, Jr., and hereafter referred to as 'England Junior') was placed on probation for a period of three years and sentenced to pay a fine in the sum of $4,000 and costs in the sum of $1,316.64. Each appellant filed a notice of appeal. The assignment of errors relied on therein allegedly arises out of instructions, rulings on evidence, and failure to grant defendants' motion for acquittal.
 
 
 7
 The evidence introduced at the trial consisted of (1) proof intended to show that valid assessments of income tax deficiencies, interest, and fraud penalties were made against England Senior on February 4, 1955, and (2) proof of various subsequent statements and acts of the appellants calculated to conceal from the Government the nature and extent of the property interests of England Senior, for the alleged purpose of preventing the Government from collecting the assessments.
 
 
 8
 As to the validity of the tax assessments, the Government introduced several pieces of documentary evidence. It was shown that England Senior was indicted on March 12, 1952, on two counts for willfully attempting to evade the federal income taxes owed by him for 1945 and 1946 by filing false and fraudulent income tax returns. This exhibit, consisting of the indictment, plea and sentence, was admitted in evidence only against England Senior. The same exhibit showed that England Senior on May 4, 1954, was permitted to withdraw his plea of not guilty and that he then entered a plea of guilty. On the same day, he was adjudged guilty and sentenced to pay a fine in the sum of $10,000. Furthermore, at the trial in this cause, England Senior (on direct examination by his own counsel) admitted that he was thus indicted in 1952 and that he pleaded guilty. The 1952 indictment alleged that England Senior reported taxes due of $644.90 for 1945 and of $559.89 for 1946, but that in fact the correct amounts of taxes were $8,303.22 for 1945 and $6,976.96 for 1946.
 
 
 9
 Having been adjudged guilty on May 4, 1954, as noted, England Senior thereafter signed certain waivers with respect to the assessment and collection of tax deficiencies, interest and penalties, in stated amounts, with reference to the years 1944, 1945, and 1946. Both waivers were on Internal Revenue Service Form 870, entitled 'Waiver of Restrictions on Tax and Acceptance of Over-assessment.'[3]
 
 
 10
 In addition to the waivers, the Government introduced in evidence two exhibits which were certificates showing that deficiencies, interest and penalties were in fact assessed against England Senior (jointly with his wife for the year 1944) on January 24, 1955, for the years 1944, 1945, and 1946.[4]
 
 
 11
 The Government contended that the aforementioned exhibits showed the filing of false returns by England Senior and permitted an assessment after expiration of the three-year statute of limitations prescribed by Section 6501, Internal Revenue Code of 1954.[5] Appellants, on the other hand, objected that the assessments were invalid because it was apparent of record that their filing in 1955 occurred long after the running of the statutory period.[6] None of the exhibits were ever admitted in evidence against England Junior.
 
 
 12
 At the close of all the evidence, appellants requested instructions which would have permitted the jury to find the assessments valid or invalid as a matter of fact. These instructions, three in number, were refused by the trial court.[7] The Government, on the contrary, requested an instruction that the assessments were valid as a matter of law, and the trial judge so charged the jury. The Government's instruction reads, in part, as follows:
 
 
 13
 'I now charge you as a matter of law that the assessments made against the defendant William B. England on February 5, 1955, in the amount of $9,849.78 as to the year 1944, and in the amount of $17,182.19 as to the years 1945 and 1946, have been valid obligations of the taxpayer to the United States Government since the dates on which the respective assessments were made until the date, November 27, 1962, on which the present indictment was returned and in the amounts, to the extent that all or any portion of these amounts have not been paid, which I have just enumerated.'
 
 
 14
 Appellants have assigned the giving of the foregoing instruction as error. We are of the opinion that the giving of said instruction by the trial court, and taking from the jury the question of the validity of the assessments, constituted reversible error.
 
 
 15
 In reversing, we hold that, in the criminal prosecution of one charged with the commission of a felony, the defendant has an absolute right to a jury determination upon all essential elements of the offense. This right, emanating from the criminal defendant's constitutional right to trial by jury,[8] is neither depleted nor diminished by what otherwise might be considered the conclusive or compelling nature of the evidence against him. This right is personal to the defendant and, like his right to a jury trial, is one which he, and he alone, may waive;[9] furthermore, in a situation wherein an understandingly tendered waiver is not forthcoming from the defendant, under no circumstances may the trial court usurp this right by ruling as a matter of law on an essential element of the crime charged.
 
 
 16
 There is no doubt that a valid assessment, and proof thereof, was an essential element of the case against appellants. Banks v. United States,204 F.2d 666 (8th Cir. 1953), remanded on other grounds, 348 U.S. 905, 75 S.Ct. 311, 99 L.Ed. 710 (1955), reaffirmed, 223 F.2d 884 (8th Cir. 1955). That it was so, in fact, was admitted by the Government, as evidenced by the statement of the Government's attorney to the trial court that, 'We have to show there was an assessment, a legal assessment.' And, as an essential element of the felony charged, the Government shouldered the burden of proving its existence, as well as the other elements of the crime, beyond a reasonable doubt.[10] As the court said in the Banks case, supra, 204 F.2d at 668:
 
 
 17
 'The court properly instructed the jury that the defendant is presumed to be innocent of the crimes alleged against him in the indictment, and that the burden was upon the government to prove him guilty beyond a reasonable doubt. That burden in this case, in which a violation of 145(b) of the Internal Revenue Code,[11] supra, is charged, required proof (1) that a tax was due from defendant to the government for each of the years charged; (2) that the defendant attempted to evade payment of that tax; and (3) that his attempt so to evade payment was willful.'
 
 
 18
 Nor is there any doubt that the fact of a valid assessment was 'in issue'. This is so in spite of a contrary result reached in a recent case, quite similar to that before us here, Guy v. United States, 336 F.2d 595 (4th Cir. 1964). There, the defendants were charged with having a still set up in violation of law, working at an unregistered distillery, and possession of materials intended for illegal use in connection with such still. The evidence apparently showed that the still had been dismantled, and the question was raised by the defense whether the several disconnected parts in fact constituted a still. Inasmuch as the evidence on this point was uncontroverted, the trial court took the issue of the existence of a still-- admittedly an essential element of the crime charged-- from the jury and ruled upon it as a mater of law in favor of the Government. The Court of Appeals for the Fourth Circuit affirmed, stating that, while 'issues of fact' must be left with the jury, there could be no such issues of fact 'where credible testimony with respect to it is neither denied nor impeached.' Id., at 597. In effect, the court ruled that a trial court could rule as a matter of law on an uncontroverted, essential element of a crime.
 
 
 19
 However, in our view, the holding in Guy ignores the traditional notion that a plea of not guilty by an accused to an indictment or information charging a criminal violation places 'in issue' all essential averments contained therein. Once the defendant has entered a plea of not guilty, everyhing material to a finding of his guilt is 'in controversy'. Thus, under our system of jurisprudence, it is technically possible for a criminal defendant to enter a plea of not guilty, introduce little or no evidence in his own defense, and rely exclusively on his presumption of innocence and the possible inability of the prosecution to prove his guilt beyond a reasonable doubt. Thereupon, 'guilt is determined by the jury, not the court.' United Brotherhood of Carpenters and Joiners of America v. United States, 330 U.S. 395, 410, 67 S.Ct. 775, 783, 91 L.Ed. 973 (1946). As was said in Roe v. United States, 287 F.2d 435, 440 (5th Cir. 1961):
 
 
 20
 '* * * No fact, not even an undisputed fact, may be dtermined by the Judge. The plea of not guilty puts all in issue, even the most patent truths. In our federal system, the Trial Court may never instruct a verdict either in whole or in part.'
 
 
 21
 Having thus established that the fact of a valid assessment of taxes was an essential element of the crime charged and that such fact was in issue in the trial below, we now pass to a brief review of the cases relevant to this inquiry.
 
 
 22
 Schwachter v. United States, 237 F.2d 640 (6th Cir. 1956), was a prosecution for selling a stolen automobile moving in interstate commerce, knowing the same to have been stolen. The trial judge, apparently of the opinion that the Government had proved that the automobile in question was in interstate commerce at the time it was sold, ruled as a matter of law as to that fact, the same being an essential element of the crime charged. Reversing on this issue, the court said:
 
 
 23
 'The rule is settled that in a criminal case the judge may not direct a verdict of guilty no matter how conclusive the evidence. United Brotherhood of Carpenters and Joiners of America v. United States, 330 U.S. 395, 408, 67 S.Ct. 775, 91 L.Ed. 973. It is necessary that the Government prove to the jury beyond a reasonable doubt every essential element of the offense charged. Christoffel v. United States, 338 U.S. 84, 89, 69 S.Ct. 1447, 93 L.Ed. 1826; Boatright v. United States, 8 Cir., 105 F.2d 737, 740. This includes the fact in this case that the car was a part of interstate commerce when the defendant sold it. Wolf v. United States, 7 Cir., 36 F.2d 450, 451. The trial judge may not direct the jury to find a controverted material fact against the defendant. Konda v. United States, 7 Cir., 166 F. 91.
 
 
 24
 'But the general rule is settled that the trial judge in a criminal case can not weigh the evidence or judge the credibility of the witnesses and take from the jury a controverted question of material fact, no matter how strongly he may be of the opinion that the evidence has established the fact beyond a reasonable doubt. United States v. Gollin, supra, 3 Cir., 166 F.2d 123, 126, certiorari denied 333 U.S. 875, 68 S.Ct. 905, 92 L.Ed. 1151; Sullivan v. United States, 85 U.S.App.D.C. 409, 178 F.2d 723, 725; Konda v. United States, supra, 7 Cir., 166 F. 91, 93; United Brotherhood of Carpenters and Joiners of America v. United States, supra, 330 U.S. 395, 408, 67 S.Ct. 775, 91 L.Ed. 973. See Smith v. United States, 6 Cir., 230 F.2d 935, 939.' (At 644 of 237 F.2d).
 
 
 25
 In Carothers v. United States, 161 F.2d 718 (5th Cir. 1947), defendants were charged in 26 counts with violations of the Emergency Price Control Act of 1942 for willfully selling a particular service at a price in excess of the designated ceiling. On appeal, the conviction gained at the trial was reversed, the court holding that the trial judge erred in ruling as a matter of law on an essential element of the offense charged, the value of the maximum price. The court said:
 
 
 26
 'This assumption, that the price had been established as matter of law at less than the price the indictment charged defendant with receiving, put the judge in the position of deciding a fact issue material to defendant's conviction, instead of submitting it to the jury for its determination, and thus depriving the defendant of his constitutional right of trial by jury.
 
 
 27
 'This being a criminal case, if, as the United States claims, the evidence had clearly and beyond question established what the maximum price was, this would not render the error harmless, for in such a case the court may not direct a verdict as to any fact.' (At 722.)
 
 
 28
 Prosecution for possession of non-taxpaid whiskey was involved in United States v. McKenzie, 301 F.2d 880 (6th Cir. 1962). At the trial, the judge had ruled as a matter of law that the fact of possession existed, and stated that the only issue remaining was the identity of the persons who had such possession. Holding that it was necessary that the Government prove to the jury beyond a reasonable doubt every essential element of the offense charged, the Sixth Circuit reversed, saying:
 
 
 29
 '* * * It was necessary in this case that the Government prove not only that appellant was driving the car, but also prove that the circumstances were such as to constitute possession by the appellant of the contents of the cardboard carton and that the carton contained non-taxpaid whiskey. Schwachter v. United States, 237 F.2d 640, C.A.6th. No matter how conclusive the evidence may be in a criminal case on a controverted material fact, the trial judge cannot make the finding or withdraw the issue from the jury.' (At 882 of 301 F.2d).
 
 
 30
 Brooks v. United States, 240 F.2d 905 (5th Cir. 1957), was an appeal from a conviction of perjury. The trial court had instructed the jury correctly that an essential element of the offense charged was whether the special agent of the Internal Revenue Service who administered oaths to the defendants had authority to administer such oaths. However, the trial judge thereafter instructed the jury as a matter of law that the requisite authority existed. The defendants thereupon assigned the giving of this instruction as reversible error, to which the reviewing court replied:
 
 
 31
 'We agree for the all-sufficient reason that it deprived the jury of its function of determining whether or not, under the evidence and as exclusive judges of the facts and of the credibility of the witness, they believed beyond a reasonable doubt that Perry was an officer authorized to administer oaths in 1955 and thus violated appellants' constitutional right to a trial by jury as guaranteed by the Sixth Amendment. Heinous as the crime of perjury is under our law, it is entitled to no relaxation of the constitutional guaranty of the citizen in order to punish it.' (At 906.)
 
 
 32
 In United States v. Manuszak, 234 F.2d 421 (3d Cir. 1956), defendant was convicted for theft of goods from an interstate shipment of freight, for interstate transportation of stolen goods, and for conspiracy. At the trial, the court in effect instructed the jury as a matter of law that the 'goods that were stolen were part of an interstate shipment', an essential ingredient of the offense. The Third Circuit Court of Appeals reversed on this issue, and said:
 
 
 33
 'The defense never agreed or stipulated that a theft had occurred. The presumption of innocence to which appellant was entitled demanded that all factual elements of the government's case be submitted to the jury. It is immaterial that the government's evidence as to the actual theft was uncontradicted. The acceptance of such evidence and the credibility of witnesses is for the jury, even though to the court the only possible reasonable result is the acceptance and belief of the government's evidence. A partial direction of the verdict occurs when the court determines an essential fact, and this denies the appellant trial by jury.' (At 424-425.)
 
 
 34
 Although the foregoing discussion is in no way an attempt to exhaust completely all that has been said in this line of cases,[12] we turn our attention now to cases cited by the Government in this appeal. We do so for the reason that we acknowledge there to be a parallel line of cases to the contrary, albeit a 'shorter' line and one less persuasive, we feel, than that here relied upon.
 
 
 35
 A case frequently cited reaching a contrary result, and one relied upon heavily by the Government here, is that of United States v. Jonikas,197 F.2d 675 (7th Cir. 1952), cert. den. 344 U.S. 877, 73 S.Ct. 171, 97 L.Ed. 679 (1952). However, evaluation of the holding therein must be prefaced by a clear characterization of the significant distinction between instructing as a matter of law on an essential element of a criminal offense, on the one hand, and the prerogative of the trial judge to comment upon the evidence, on the other. With the latter, of course, we have no quarrel. That the trial judge may fairly comment upon the evidence was well-established at English common law in much earlier times,[13] and this right of the trial judge has repeatedly been enunciated by the United States Supreme Court since the earliest days of this Republic.[14]
 
 
 36
 With this distinction in mind, it is clearly apparent that the Jonikas case is distinguishable from the case at hand. Jonikas was a proceeding upon a motion for vacation of sentence under 28 U.S.C. 2255, the petitioner therein having been convicted of passing counterfeit bills. The record disclosed that, at the trial, the court told the jury in its instructions that in the opinion of the judge he did not think there was 'any great amount of question in the evidence' that the defendant 'did pass these bills at the places indicated,' so that 'it narrows itself down pretty much in this case to the question of whether or not he knew these bills to be counterfeit.' The court further told the jury:
 
 
 37
 'That they are counterfeit has been admitted and has been proved. I do not think there is any doubt about that in the evidence. * * * You can see that for yourself. * * * So you do not have to spend a great deal of time on that * * *.' (At 677 of 197 F.2d.)
 
 
 38
 The emphasized portion of this instruction makes it abundantly clear that, although the trial judge made known to the jury in very forceful terms what he thought the evidence to be, the issue in question was never actually taken from the jury and ruled upon as a matter of law. The mere fact that the jury did 'not have to spend a great deal of time' on the question indicated that it could, at least, spend some time on it. And, this being true, it was technically possible for the jury to disregard the admonitions of the judge and decide upon the issue as it alone saw fit. Thus, left intact with the jury was what Mr. Justice Holmes once termed the 'technical right' of the jury 'to decide against the law and the facts,' Horning v. District of Columbia, 254 U.S. 135, 138-139, 41 S.Ct. 53-54, 65 L.Ed. 185 (1920), a statement to which we here give our approval.
 
 
 39
 The distinction just drawn, between instructing upon a material fact and commenting upon the evidence, has not infrequently been stated by other courts. The Supreme Court said, in United States v. Murdock, 290 U.S. 389, 394, 54 S.Ct. 223, 225, 78 L.Ed. 381 (1933):
 
 
 40
 'A federal judge may analyze the evidence, comment upon it, and express his views with regard to the testimony of witnesses. He may advise the jury in respect of the facts, but the decision of issues of fact must be fairly left to the jury. * * *'
 
 
 41
 In Lovejoy v. United States, 128 U.S. 171, 173, 9 S.Ct. 57, 58, 32 L.Ed. 389 (1888), an earlier Court stated the general rule:
 
 
 42
 'It is established by repeated decisions that a court of the United States, in submitting a case to the jury, may at its discretion express its opinion upon the facts, and that such an opinion is not reviewable error, so long as no rule of law is incorrectly stated and all matters of fact are ultimately submitted to the determination of the jury. * * *'
 
 
 43
 Other pronouncements of this distinction are unnecessary and too numerous to set forth.[15]
 
 
 44
 Aside from the Jonikas case, and for the same proposition, the Government has referred the court to Malone v. United States, 238 F.2d 851 (6th Cir. 1956), and Lyons v. United States, 325 F.2d 370 (9th Cir. 1963). And, as has been indicated, there are other cases to the same effect.[16] To the degree that these cases rely upon Jonikas, we distinguish them for the same reason; and, to the degree they do not, we deem them improvident.[17]
 
 
 45
 Surely the course we take here today is that which places the greater faith in the jury system. While it is not our purpose to recount the virtues of that system, we take special note of a case, very similar to the one at bar, decided by a predecessor of this court in which faith in the common law notion of the jury in a criminal prosecution was eloquently expressed. In Konda v. Unied States, 166 F. 91 (7th Cir. 1908), defendant was convicted below of sending an obscene pamphlet through the mails in violation of law. One of the essential elements of the crime, which the Government had the burden of proving byond a reasonable doubt, was that the material mailed was actually obscene. The trial court, however, ruled as a matter of law in favor of the prosecution on this issue and withdrew it from the jury's consideration. Reversing, this court said, and we quote at length:
 
 
 46
 'In our judgment, however, a defendant in a criminal case has the absolute right to require that the jury decide whether or not the evidence sustains each and every material allegation of the indictment. Material allegations are allegations of fact. And each, as much as any other, enters into a verdict of guilty. If the judge may decide that one or another material allegation is proven, he may decide that all are proven, and so direct a verdict of guilty. In a civil case, the judge may exercise the power of directing a verdict for the plaintiff when there is no conflict in the evidence and the only inference that can be drawn by reasonable minds as to the ultimate facts in issue favors the plaintiff. This power, we opine, grew out of the practical administration of the fundamental power to review, on a motion for a new trial, the findings of the jury. In the civil case above supposed, if the jury should return a verdict for the defendant, the judge would set it aside; and he would continue to set aside verdicts in that case until one should be returned that was in accord with the undisputed facts. So he cuts off the possibility of useless verdicts by directing in the first instance the jury to return the only verdict he will let stand. But in a criminal case, if the jury returns a verdict for the defendant, the judge, no matter how contrary to the evidence he may think the verdict is, cannot set it aside and order a new trial. Therefore, since the judge is without power to review and overturn a verdict of not guilty, there is no basis on which to claim the power to direct a verdict of guilty. Our conclusion is that an accused person has the same right to have 12 laymen pronounce upon the truth or falsity of each material averment in the indictment, if the evidence against him is clear and uncontradicted, as he unquestionably would have if it were doubtful and conflicting. Inasmuch as jurors are rightly trusted, in close and difficult cases to maintain the peace and dignity of organized society, surely they may be relied on in the plain and simple ones.' (At 93.)
 
 
 47
 The holding in, and the language just quoted from, the Konda case might well be considered controlling of the issue now before the court. Not only has that case indicated the traditional and proper role of the jury in a criminal case in the federal courts, but implicit therein is the broader concept fundamental in our law that the rights of the criminal defendant are to be jealously guarded. We are not here concerned with the guilt or innocence of these appellants, and for that reason we have not attempted to weigh the evidence in the trial below with a view to possibly finding the error not prejudicial.[18] Rather, we are presented here with a question going to the very heart of what we conceive to be the fair and proper administration of criminal justice. 'It is a fundamental precept of the administration of justice in the federal courts that the accused must not only be guilty of the offense of which he is charged and convicted, but that he be tried and convicted according to proper legal procedures and standards. In short, it is not enough that the accused be guilty; our system demands that he be found guilty in the right way.' Wilson v. United States, 250 F.2d 312, 324-325 (9th Cir. 1958).
 
 
 48
 Having concluded that there was reversible error in the giving of Government's Requested Instruction No. 10, given in both the case against England Senior and that against England Junior below, it is unnecessary to discuss the remaining specifications of error. The judgments and sentences are therefore reversed and the cases are remanded to the District Court for new trials.
 
 
 49
 Reversed.
 
 ADDENDUM
 
 50
 GRANT, District Judge.
 
 
 51
 Subsequent to the entry of the Order of this Court reversing the judgments and sentences of the District Court below, the United States filed a Petition for Rehearing and 'Suggestion that Rehearing Be Before the Court En Banc.' This petition, denied by this Panel and by the Court en banc, again raised the argument that the Commissioner's assessment of a tax deficiency is final, unless the taxpayer avails himself of the remedies provided by statute, for the reason that the decisions of an administrative body may not be reviewed by a jury in a criminal case, but may be reviewed by the trial judge only to determine whether they are supported by substantial evidence. Because this was the position adopted by Judge Swygert in his dissenting opinion herein, and because of the importance of the question with respect to the relation of administrative law and the Sixth Amendment, we feel compelled to provide a brief statement of our views on the issue raised again by the Government's Petition for Rehearing. As such, the statement that follows should be considered, and is, a part of the majority opinion in this case.
 
 
 52
 The Petition for Rehearing does not question the point made in the majority opinion that 'a valid assessment, and proof thereof, was an essential element of the case against appellants.' For this proposition, we relied on the case of Banks v. United States, 204 F.2d 666 (8th Cir. 1953), and the statement of the Government attorney at the trial in this cause to the effect that, 'We have to show there was an assessment, a legal assessment.' That the existence of an outstanding tax liability is an essential element of a crime under Section 7201 of the Internal Revenue Code of 1954 was recently reiterated in Sansone v. United States, 380 U.S. 343, 85 S.Ct. 1004, 13 L.Ed.2d 882 (1965). There, the Supreme Court said:
 
 
 53
 'As has been held by this Court, the elements of 7201 are willfulness; the existence of a tax deficiency, and an affirmative act constituting an evasion or attempted evasion of the tax.'
 
 
 54
 The brunt of the Court's opinion in this cause is that, 'in the criminal prosecution of one charged with the commission of a felony, the defendant has an absolute right to a jury determination upon all essential elements of the offense.' The Government's argument on its Petition for Rehearing is that an exception is to be carved out of this principle in the instance where an element of the crime charged has previously been determined by an administrative agency. The contention raised, therefore, is not that a valid assessment is not an essential element of a Section 7201 offense, but that a determination upon the various elements of such an offense is 'split' between the appropriate governmental agency and the trial jury.
 
 
 55
 The Government's contention apparently is to prevail even in the case in which, as here, the agency's determination involves a 'vital and controversial' question of fact. The issue of the assessment's validity in this case turned on the antecedent question of fraud and the impact of fraud on the statute of limitations, assuredly a question of fact. That the issue of fraud is one of fact and not one of law under such circumstances was the decision of this Court in Jaeger Motor Car Company v. Commissioner, 284 F.2d 127 (7th Cir. 1960), even though the civil case applied the 'substantial evidence' test and held itself bound by a previous determination of the Tax Court. There, the Court said:
 
 
 56
 'Where a return is false and fraudulent, with intent to evade tax, assessment and collection of deficiency may be made at any time. Internal Revenue Code of 1939, 276(a), 26 U.S.C.A. 276(a). Fraud is a question of fact.'
 
 
 57
 The apparent constitutional defect in such a procedure of 'splitting' the elements of a crime, argues the Government, is corrected or remedied by the fact that attack upon the agency's determination can be made through the procedure made available to that end in the particular legislation involved. As Judge Swygert pointed out in his dissent in this case, 'the statutory methods of relief from an illegal assessment' are to file 'a petition for redetermination in the Tax Court * * * or pay the tax and bring suit for a refund in a district court.'
 
 
 58
 However, what has not been pointed out is the fact that the administrative review of the validity of the assessment was not available to the co-defendant, William B. England, Jr. England Junior had no such 'statutory method of relief' from an illegal assessment for the reason that he was not party to the tax returns filed for the years charged in the indictment. It is to be remembered that the indictment in this case charged both father and son with an attempt to evade and defeat payment of income taxes owed by the father (and the mother for the year 1944 when a joint return was filed), not those owed by the son. Furthermore, England Junior was not named in the 1952 indictment charging the father with filing a false and fraudulent income tax return for the years 1945 and 1946. England Junior entered no plea to this earlier indictment; there was no finding of guilty as to him; he paid no fine; he executed no waivers; and none of the evidence of such acts of the father was ever admitted against him during the trial in this case.
 
 
 59
 The conclusion is inescapable that no assessment was ever made as to England Junior. The question then becomes: What happens to England Junior's right to have the issue of a valid assessment-- an essential element of the crime with which he was charged-- reviewed and determined as against him? The importance of this question is emphasized by the fact that the validity of the assessment rests solely on an antecedent finding of fraud-- the fraud, not of England Junior, but of his father, for which England Junior could be held responsible only if he had knowledge thereof. See United States v. England, 229 F.Supp. 493, 499 (E.D.Ill. 1964).
 
 
 60
 Moreover, such statutory methods of relief from the determination of the administrative agency involved have not succeeded in satisfying all who have faced the question of the constitutionality of 'splitting the elements' of a criminal offense between administrative agency and trial jury. Justice Jackson (joined by Justice Frankfurter) expressed eloquent disapproval of such technique in a dissenting opinion in United States v. Spector, 343 U.S. 169, 177-180, 72 S.Ct. 591, 96 L.Ed. 863 (1952). Justices Jackson and Frankfurter saw what they felt to be an inherent constitutional defect in the statutory scheme involving administrative determinations of liability to deportation. Having dispensed with important constitutional safeguards in obtaining an administrative adjudication that the alien is guilty of conduct making him deportable on the ground that it is only a civil proceeding, the Government sought to turn around and use the result as a conclusive determination of that fact in a criminal proceeding. This, they asserted, the Government cannot do. Justice Jackson's opinion declares:
 
 
 61
 'The subtlety of the present Act (Immigration Act of 1917, Section 20(c) as amended, 8 U.S.C. 156(c)) consists of severing the issue of unlawful presence for administrative determination which then becomes conclusive upon the criminal trial court. We must not forget that while the alien is not constitutionally protected against deportation by administrative process he stands on an equal constitutional footing with the citizen when he is charged with crime. If Congress can subdivide a charge against an alien and avoid jury trial by submitting the vital and controversial part of it to administrative decision, it can do so in the prosecution of a citizen. And if vital elements of a crime can be established in the manner here attempted, the way would be open to effective subversion of what we have thought to be one of the most effective constitutional safeguards of all men's freedom.' (343 U.S. at 177-178, 72 S.Ct. at 596.)[19]
 
 
 62
 The obvious constitutional repugnance to the situation wherein a criminally accused may be subject to conviction for violating an invalid administrative order has led the Supreme Court to hold that such an order is not entirely immune from review in the criminal proceeding. In Estep v. United States, 327 U.S. 114, 66 S.Ct. 423, 90 L.Ed. 567 (1946), the Court felt that to hold that the validity of the administrative order for whose violation petitioner had been indicted could not be reviewed in the criminal proceeding would be to deny him the opportunity to prove the nonexistence of an essential element of the crime with which he was charged. The Court's opinion asserted:
 
 
 63
 '* * * We cannot readily infer that Congress departed so far from the traditional concepts of a fair trial * * * as to provide that a citizen of this country should go to jail for not obeying an unlawful order of an administrative agency. We are loath to believe that Congress reduced criminal trials under the Act to proceedings so barren of the customary safeguards which the law has designed for the protection of the accused.' (327 U.S. at 122, 66 S.Ct. at 427.)
 
 
 64
 Granting the foregoing, we have still to reach the question as to the scope of the review which is to be afforded in the criminal proceeding. Within a year after Estep, the Supreme Court faced this issue in the case of Cox v. United States, 332 U.S. 442, 68 S.Ct. 115, 92 L.Ed. 59 (1947). The Court held, in effect, that the scope of review is no broader-- if anything, it is even narrower-- than that available in the normal proceeding for direct review of administrative action. The Court rejected petitioner's claim that the validity of the administrative decision was to be submitted to the jury to meet Sixth Amendment standards. The language of the Cox opinion to this effect has already been quoted by Judge Swygert in his dissent herein.
 
 
 65
 The position of the Court in Cox has often been defended on the ground that the validity of the administrative action is a question of law, and that the Sixth Amendment rights of an accused are fully protected by a submission of such issue to the trial judge, rather than the jury, for determination. Of course, the line has always been considered fine between question of law and questions of fact. We believe in the cases before us that the line was breached and the question was factual in nature. The validity of the assessment could be proved only by a showing of fraud-- a factual question and a matter collateral to and apart from the record upon which the assessment itself was based.
 
 
 66
 There is another reason for holding that the validity of the assessment should have been submitted to the jury for review and determination. That reason arises out of the fact that the 1952 indictment to which England Senior pleaded guilty and which the Government offered as proof of the tolling of the statute of limitations on the assessment charged an income tax violation for the years 1945 and 1946. The indictment in this case, on the other hand, involved violations for the years 1944, 1945, and 1946. In other words, with respect to the number of years involved, the indictment in this case was more inclusive than that in the prior prosecution. Therefore, in order to find the assessment valid for the year 1944, an inference would have to be drawn from the evidence admitted on the issue of the prior fraud, all of which concerned the years 1945 and 1946. Certainly, the drawing of such an inference is properly one for the trial jury, not the trial court.
 
 
 67
 The Government also relies heavily on the language of Cox as adopted in United States v. Heikkinen, 240 F.2d 94 (7th Cir. 1957). There, this Court said:
 
 
 68
 '* * * In essence, defendant urges that the issue of the validity of the order of deportation must be tried in the criminal trial by the jury. Defendant finds support for this contention in Mr. Justice Jackson's dissenting opinion in United States v. Spector * * *. However, the concept of a jury passing independently on an issue previously determined by an administrative body or reviewing the action of an administrative body is contrary to settled federal practice.' (240 F.2d at 99.)
 
 
 69
 It is here urged that such a summary dismissal of the view of Justice Jackson in his dissent in Spector was not warranted by a close analysis of the decisions of the Supreme Court with respect to this issue. This is so for two reasons: First, Justice Jackson's dissent was not offset by a contrary holding by the majority in the Spector case. The opinion of the Court, by Justice Douglas, was that the issue of 'splitting the elements' of the criminal offense between administrative agency and trial court or jury was not reached inasmuch as it was 'neither raised by the appellee nor briefed nor argued here.' 343 U.S. at 172, 72 S.Ct. at 593. Far from being 'settled federal practice', the Court indicated explicitly that it considered the question open:
 
 
 70
 'It will be time to consider whether the validity of the order of deportation may be tried in the criminal trial either by the court or by the jury, cf. Yakus v. United States, 321 U.S. 414 (64 S.Ct. 660, 88 L.Ed. 834); Cox v. United States, 332 U.S. 442 (68 S.Ct. 115, 92 L.Ed. 59) when and if the appellee seeks to have it tried. That question is not foreclosed by this opinion. We reserve decision on it.' (343 U.S. at 172-173, 72 S.Ct. at 594)
 
 
 71
 Secondly, the dissent in Spector indicated a shift in the position of the several Justices who had previously considered the issue. See, 1 Davis: Administrative Law 595-597 (8.16). For example, in the 1943 case of Yakus v. United States, 321 U.S. 414, 64 S.Ct. 660, 88 L.Ed. 834 (1943), cited in Heikkinen and by the Government here, Justices Jackson and Frankfurter voted with the majority. In the Cox case, Justice Jackson was again with the majority and Justice Frankfurter concurred in the result, but wrote no opinion. Thus, it is clear that by the time the Supreme Court faced the issue in Spector, Justices Jackson and Frankfurter had completely changed their views, feeling at that later date that review of an administrative order should be by the jury. Furthermore, Justice Black dissented in Spector for another reason (that the statute in question was void for vagueness) and did not reach the issue discussed by Justice Jackson, but in a footnote Justice Black did state that he had 'not yet seen a satisfactory reason for rejecting his (Justice Jackson's) view.' 343 U.S. at 174, n. 2, 72 S.Ct. at 594.
 
 
 72
 Therefore, in the Spector case, six Justices were of the opinion that the issue of 'splitting the elements' was open and reserved for future decision, and three Justices thought such a procedure in a criminal proceeding did not confrom to constitutional requisites. The only and obvious conclusion to be reached from the foregoing is that the Yakus, Cox, and Heikkinen cases are poor authority for the position taken by the Government, and that 'federal practice' in this regard is not at all as 'settled' as the Government might have it.
 
 
 73
 The authority of Yakus and Cox is not compelling in this case for another reason. One cannot but conclude from a reading of these cases that the Court was impressed by the extraordinary nature of the legislation involved. The 'streamlined' procedures for review under the Emergency Price Control Act (Yakus) and the Selective Training and Service Act (Cox) were necessitated by the war-time emergency and, as such, certainly should not be determinative of issues raised under peace-time operation of the Internal Revenue Act.
 
 
 74
 Likewise, deportation liability as involved in Heikkinen differs markedly from tax liability. The former has always been considered as an executive, rather than a legislative, responsibility. Furthermore, 'administrative determinations of liability to deportation have been sustained as constitutional only by considering them to be exclusively civil in nature, with no criminal consequences or connotations.' United States v. Spector, supra 343 U.S. at 178, 72 S.Ct. at 596 (dissenting opinion). Such is not the case here, wherein the entire proceeding was criminal in conception and operation-- violation of Section 7201 of the Internal Revenue Code of 1954 being denominated a felony. In short, criminal tax cases should be considered apart from cases involving deportation.
 
 
 75
 The foregoing brings to mind another well-drawn distinction between the administrative action taken by the Internal Revenue Service in such a case as this and other administrative action of governmental agencies. Such distinction has been formulated as follows:[20]
 
 
 76
 '* * * Where the administrative agency is set up not so much to carry out a general economic or social policy as to lay a foundation for criminal prosecutions, then it should be beyond the power of the legislature to vest such agency even with the power to determine the facts and make such finding binding in a criminal prosecution.'
 
 
 77
 Certainly one of the primary purposes of the Internal Revenue Service in making a determination as to a tax assessment or a tax deficiency is to prepare for possible criminal prosecution. Such is not so in proceedings involving deportation liability, price control, or selective service classification. For example, every male citizen of a certain age is given a selective service classification, not merely those who appear to have violated the law and whom the Government or the Selective Service Board deem susceptible to prosecution. In other words, the action taken by the Internal Revenue Service such as we have in this case is intimately related to prosecution for criminal behavior. Moreover, had it been agents of the F.B.I., rather than those of the I.R.S., who conducted the investigation, surely the result of that investigation would not receive the immunity from review that such a finding is said to receive when it is made by the I.R.S.-- simply because the latter is an 'administrative agency'.
 
 
 78
 We have already referred to the fact that, at the time of the trial in this case, the Government was of the opinion that proof of a valid assessment was necessary to a successful prosecution of the defendants. The full colloquy on this point is as follows:
 
 
 79
 'The Court: All right, gentlemen, this case rises or falls on those four exhibits (the assessments and the waivers). 'Mr. McBride (for the Government): We have to show there was an assessment, a legal assessment. 'The Court: Would you agree to that statement, that this case rises or falls on the four exhibits now being offered? 'Mr. Bigler (for the defendants): I think there must be an assessment. I assume these are your only exhibits of your assessment.'
 
 
 80
 The Government now contends, however, that the issue cannot and should not be submitted to a jury for determination thereon. The obvious question then becomes: Why did the Government submit such evidence on the issue? and Why did the Government attorney make such a statement in open court? In this connection it is well to point out that much of the important evidence going to the validity of the assessment introduced by the Government at the trial did not pertain to the assessment directly, but rather to the issue of fraud and the statute of limitations. Perhaps, then, the Government did so for the reason that it did not deem the assessment itself reviewable by the jury, but it did think the collateral question of fraud reviewable. The uncontradicted assumption of Mr. Bigler, counsel for defendants, would then be correct-- that the 'only exhibits of your assessment' were the assessment and waivers themselves (Government Exhibits 1, 2, 3, and 4), and that the indictment, plea, judgment, and offers of compromise in the earlier fraud case (Government Exhibits 16, 17, and 18) were not such exhibits of the assessment. As such, the latter should have been submitted to the jury for a determination on the issue of fraud and the statute of limitations.
 
 
 81
 As a conclusion to the foregoing remarks on the issue presented in the Government's Petition for Rehearing, we adopt the closing paragraph of Professor Bernard Schwartz's article, 'Administrative Law and the Sixth Amendment: 'Malaise in the Administrative Scheme", as follows:
 
 
 82
 '* * * If that constitutional provision (the Sixth Amendment) means anything, one accused of a crime which consists in the violation of an administrative order is entitled to a full trial on his defense that he committed no crime because the order in question was invalid. The concepts of statutory provisions for judicial review as exclusive and of a narrow scope of review may be valid and valuable ones in administrative-law cases. That is true because such cases are exclusively civil in character. They are wholly out of place in criminal proceedings. When the criminal law is used as an auxiliary of the administrative process, the ordinary concepts applicable in administrative law proceeding must give way in favor of the constitutional right of the accused to a full and fair trial. Only thus can our administrative law be reconciled with the demands of the Sixth Amendment.'[21]
 
 
 83
 We are compelled to the conclusion that failure to submit to the jury the issue of fraud-- as it pertained to the validity of the assessment-- constituted reversible error.
 
 
 84
 SWYGERT, Circuit Judge, votes to grant the Government's Petition for Rehearing and does not join in this Addendum but adheres to his dissent.
 
 
 85
 -------------------------------------------------------------------------------
 Section 293(b)
 50% Fraud
 Type of Tax Year Ending Tax Penalty Total
-------------------------------------------------------------------------------
 Income ...... 12-31-1944 $9,849.78 $6,321.92 $16,171.70
 Income ...... 12-31-1945 9,360.53 4,717.84 14,078.37
 Income ...... 12-31-1946 7,821.66 3,910.83 11,732.49
 
 
 86
 The waivers also carried a printed "Note" at the bottom of the page, stating
 
 
 87
 that the "execution
 
 
 88
 and filing of this form * * * will expedite the adjustment of your tax
 
 
 89
 liability as indicated
 
 
 90
 above", and stating further that the waiver was not "a final closing agreement"
 
 
 91
 precluding
 
 
 92
 the assertion of a further deficiency and did not "extend the statutory period
 
 
 93
 of limitation
 
 
 94
 for refund, assessment, or collection of the tax".
 
 
 95
 1944 1945 1946
 ---------- ---------- ----------
Audit Deficiency Tax ................... $ 9,849.78 $ 9,360.53 $ 7,821.66
Interest from 3-15-45 to 12-16-54 ...... 5,763.70 4,915.78 3,638.32
Penalty (Sec. 293(b) of 1939 Internal
 Revenue Code) ........................ 6,321.92 4,717.84 3,910.83
 ---------- ---------- ----------
 $21,935.40 $18,994.15 $15,370.81
 
 
 96
 SWYGERT, Circuit Judge, (dissenting).
 
 
 97
 The court holds that the district judge erred in instructing the jury that as a matter of law the assessments made against William B. England, Sr., on February 4, 1955, were valid obligations of the defendant. I disagree that the instruction was erroneous.
 
 
 98
 Defendants were charged with attempted evasion of taxes owed by England Senior and assessed against him on February 4, 1955. In order to prove that he was liable for income taxes totaling $27,031.97, covering the years 1944, 1945, and 1946, the Government introduced waivers of restrictions on the assessments signed by the defendant pursuant to section 6213(d) of the Internal Revenue Code of 1954. The assessments themselves were introduced as part of the Government's proof. Defendants objected on the grounds that the assessments were invalid because they were made in February 1955, which was beyond the three-year statute of limitations prescribed by section 6501 of the Code. To prove that the assessments were timely and permitted by the section 6501(c)(1) exception to the statute of limitations, the Government introduced a record of England Senior's plea of guilty in the year 1952 to charges of willfully attempting to evade income taxes for the years 1945 and 1946.
 
 
 99
 Defendants made no effort to rebut the Government's proof that the assessments represented unpaid income taxes for the years 1944, 1945, and 1946. Moreover, they did not dispute the Government's evidence that England Senior had filed fraudulent tax returns for those years, thus permitting the assessments to be made in 1955 under the provisions of section 6501(c)(1). In these circumstances, there was no issue of fact which allowed the jury to decide whether the amounts assessed were valid obligations of England Senior during the time covered by the indictment. Defendants did not deny that these taxes were owed by England Senior. They disputed only the assertion that the taxes were a continuing obligation and contended that the assessments were barred by the statute of limitations. That was a legal question for decision by the trial court, not by the jury.
 
 
 100
 Whether a person owes federal taxes is initially a matter for determination by the Commissioner of Internal Revenue as delegate of the Secretary of Treasury.[1] That determination is made final by an assessment. 'Once the tax is assessed, the taxpayer will owe the sovereign the amount when the date fixed by law for payment arrives. * * * The assessment is given the force of a judgment, and if the amount assessed is not paid when due, administrative officials may seize the debtor's property to satisfy the debt.' Bull v. United States, 295 U.S. 247, 259, 55 S.Ct. 695, 699, 79 L.Ed. 1421) (1935). The taxpayer may contest the Commissioner's determination by filing a petition for redetermination in the Tax Court or he may pay the tax and bring suit for a refund in a district court.[2] These are the statutory methods of relief from an illegal assessment; if they are not invoked, the assessment stands as a final judgment. For these reasons I believe that this court is permitting an unauthorized review by a jury in a criminal case of the validity of a tax assessment.
 
 
 101
 Analogous situations were presented in cases arising under the Selective Training and Service Act of 1940. In Cox v. United States, 332 U.S. 442, 453, 68 S.Ct. 115, 120, 92 L.Ed. 59 (1947), the Supreme Court said: 'The concept of a jury passing independently on an issue previously determined by an administrative body or reviewing the action of an administrative body is contrary to settled federal administrative practice; the constitutional right to jury trial does not include the right to have a jury pass on the validity of an administrative order.' Accord, Estep v. United States, 327 U.S. 114, 66 S.Ct. 423, 90 L.Ed. 567 (1946); Falbo v. United States, 320 U.S. 549, 64 S.Ct. 346, 88 L.Ed. 305 (1944).
 
 
 102
 The decision in Cox was followed by this court in United States v. Heikkinen, 240 F.2d 94 (7th Cir. 1957). There we held that although the defendant was entitled to attack the validity of a deportation order by having the issue submitted to the trial judge and the reviewing courts, he had no constitutional right to have the jury pass upon the validity of the order.
 
 
 103
 Moreover, in a case dealing with a criminal violation of the Emergency Price Control Act of 1942, the Supreme Court held that the defendant had no constitutional right to have the validity of a price regulation submitted to the jury when he had adequate means to test the validity of the regulation in the Emergency Court of Appeals. Yakus v. United States, 321 U.S. 414, 64 S.Ct. 660, 88 L.Ed. 834 (1944).
 
 
 104
 The majority does not consider the other assigned errors. For that reason I shall not discuss them except to say that I believe they are without merit. I would affirm.
 
 
 
 [1]
 And also owed by the mother, Mary England, for the year 1944, since the father filed a joint return for that year
 
 
 [2]
 Internal Revenue Code of 1954, Section 7201, 26 U.S.C. 7201:
 'Attempt to evade or defeat tax
 'Any person who willfully attempts in any manner to evade or defeat any tax imposed by this title or the payment thereof shall, in addition to other penalties provided by law, be guilty of a felony and, upon conviction thereof, shall be fined not more than $10,000, or imprisoned not more than 5 years, or both, together with the costs of prosecution.' Title 18, United States Code, Section 2: 'Principals
 '(a) Whoever commits an offense against the United States or aids, abets, counsels, commands, induces or procures its commission, is punishable as a principal.
 '(b) Whoever willfully causes an act to be done which if directly performed by him or another would be an offense against the United States, is punishable as a principal.'
 
 
 [3]
 One waiver concerned the year 1944 and was signed by England Senior and his wife; the other, in identical form, concerned the years 1945 and 1946 and was signed only by England Senior, since he filed individual returns for those years. Both forms were stamped as received by the Director of Internal Revenue on November 16, 1954, and contained the following language:
 'Pursuant to section 272(d) of the Internal Revenue Code or corresponding provisions of prior internal revenue laws, the restrictions provided in section 272(a) of the Internal Revenue Code or corresponding provisions of prior internal revenue laws are hereby waived and consent is given to the assessment and collection of the following deficiencies, together with interest on the tax as provided by law; and the following overassessments are accepted as correct:'
 The waivers then listed deficiencies and penalties as follows (the 1944 deficiency appeared on the separate waiver filed for that year, as already noted, but for convenience all three years are stated together here):
 The waivers also carried a printed 'Note' at the bottom of the page, stating that the 'execution and filing of this form * * * will expedite the adjustment of your tax liability as indicated above', and stating further that the waiver was not 'a final closing agreement' precluding the assertion of a further deficiency and did not 'extend the statutory period of limitation for refund, assessment, or collection of the tax'.
 
 
 [4]
 The amounts stated therein were as follows:
 
 
 [5]
 Internal Revenue Code of 1954, Section 6501, 26 U.S.C. 6501:
 'Limitations on assessment and collection
 '(a) General rule.-- Except as otherwise provided in this section, the amount of any tax imposed by this title shall be assessed within 3 years after the return was filed (whether or not such return was filed on or after the date prescribed) or, if the tax is payable by stamp, within 3 years after such tax became due, and no proceeding in court without assessment for the collection of such tax shall be begun after the expiration of such period.
 '(c) Exceptions.--
 '(1) False return.-- In the case of a false or fraudulent return with the intent to evade tax, the tax may be assessed, or a proceeding in court for collection of such tax may be begun without assessment, at any time.'
 
 
 [6]
 Aside from this objection, based on the face of the record, but which was raised consistently at the trial, the defense introduced no evidence and made no further effort to show that the assessments were invalid. See United States v. England, 229 F.Supp. 493, 499 (E.D.Ill.1964)
 
 
 [7]
 Defendants' Requested Instruction No. 6 (Refused):
 'An assessment, however, must be made by the Revenue Service within three years after the date a return is filed for any given year except in the case where a false or fraudulent return is filed with intent to evade the tax, in which case an assessment may be made at any time.
 'Evidence of the filing of a false or fraudulent return to allow an assessment to be made after three years from the date a return is filed must be clear and convincing against any defendant charged with attempting to evade taxes due and owing by anyone as a result of such assessment.'
 Defendants' Relquested Instruction No. 7 (Refused):
 'One of the elements of the charge made against each defendant is that taxes were due and owing by defendant William Benjamin England to the United States between June 27, 1955, and November 27, 1962, substantially as set out in the indictment.
 'Before you can find that such taxes were due and owing, however, you must find that the taxes were properly assessed on or about February 4, 1955.'
 Defendants' Requested Instruction No. 8 (Refused):
 'In the case where several defendants are charged with attempting to evade the payment of incomes taxes allegedly due from one of them by making false statements, the assessment of such taxes must be made within three years after the dates when returns were filed for the years involved, unless within the three year period the taxpayer and Internal Revenue extended the time for assessment by agreement and the assessment or assessments were imposed within the extended period or periods.'
 
 
 [8]
 On the meaning of trial by jury, see Patton v. United States, 281 U.S. 276, 50 S.Ct. 253, 74 L.Ed. 854 (1930). Art. III, 2, cl. 3, of the United States Constitution provides that 'The Trial of all Crimes, except in Cases of Impeachment, shall be by Jury * * *.' On this, see, e.g., District of Columbia v. Colts, 282 U.S. 63, 51 S.Ct. 52, 75 L.Ed. 177 (1930); District of Columbia v. Clawans, 300 U.S. 617, 57 S.Ct. 660, 81 L.Ed. 843 (1937)
 
 
 [9]
 Where the accused is intelligent and competent he may, with the approval of the court, waive a jury trial even though without the advice of counsel. Adams v. United States ex rel. McCann, 317 U.S. 269, 63 S.Ct. 236, 87 L.Ed. 268 (1943)
 
 
 [10]
 We note that appellants, in their Requested Instruction No. 6, supra, note 7, state that the validity of an assessment made subsequent to the running of the applicable limitations period must be established by 'clear and convincing' evidence. In their argument in support of the instruction, appellants relied upon Kalil v. Commissioner, 271 F.2d 550 (5th Cir. 1959). The case cited, however, is a civil, rather than a criminal, case to which a different standard of proof applies. Moreover, the trial court instructed correctly as to the standard of proof when it told the jury that it 'must not convict the defendants unless every fact necessary to establish his or their guilt has been proven to your satisfaction beyond a reasonable doubt.' Finally, there is no real distinction to be drawn between a 'tax due and owing' and a tax validly assessed. The trial court also instructed correctly on this point, stating that
 'an assessment is prima facie correct for all purposes,' and 'once assessed, the tax liability is a valid obligation of a taxpayer due and owing to the Federal Government. * * *'
 
 
 [11]
 The 1939 predecessor to Section 7201 of the Internal Revenue Code of 1954
 
 
 [12]
 See cases cited elsewhere in this opinion; and, for cases to the same effect, see, e.g., United States v. Raub, 177 F.2d 312 (7th Cir. 1949); United States v. Gollin, 166 F.2d 123 (3rd Cir. 1948), cert. den. 333 U.S. 875, 68 S.Ct. 905, 92 L.Ed. 1151 (1948); Sullivan v. United States, 85 U.S.App.D.C. 409, 178 F.2d 723 (1949); Smith v. United States, 230 F.2d 935 (6th Cir. 1956). See also, Christoffel v. United States, 338 U.S. 84, 69 S.Ct. 1447, 93 L.Ed. 1826 (1949); Boatright v. United States, 105 F.2d 737 (8th Cir. 1939); Colt v. United States, 158 F.2d 641 (5th Cir. 1946); Bollenbach v. United States, 326 U.S. 607, 66 S.Ct. 402, 90 L.Ed. 350 (1946); United Brotherhood of Carpenters and Joiners of America v. United States, 330 U.S. 395, 67 S.Ct. 775, 91 L.Ed. 973 (1947)
 
 
 [13]
 Sir Matthew Hale, in History of the Common Law of England, 2d Ed., pp. 256-257, thus described the function of the trial judge at common law:
 'Herein he (the judge) is able, in matters of law emerging upon the evidence, to direct them (the jury); and also, in matters of fact to give them a great light and assistance by his weighing the evidence before them, and observing where the question and knot of the business lies, and by showing them his opinion even in matters of fact; which is a great advantage and light to laymen: And thus, as the jury assists the judge in determining the matters of fact, so the judge assists the jury in determining points of law, and also very much in investigating and enlightening the matter of fact, whereof the jury are judges.'
 
 
 [14]
 See, e.g., Carver v. Jackson ex dem. Astor, 4 Pet. 1 (29 U.S. 1), 7 L.Ed. 761 (1830); Mitchell v. Harmony, 13 How. 115 (54 U.S. 115), 14 L.Ed. 75 (1851); Vicksburg, etc. Railroad Co. v. Putnam, 118 U.S. 545, 7 S.Ct. 1, 30 L.Ed. 257 (1886); United States v. Philadelphia & Reading Railroad, 123 U.S. 113, 8 S.Ct. 77, 31 L.Ed. 138 (1887); Lovejoy v. United States, 128 U.S. 171, 9 S.Ct. 57, 32 L.Ed. 389 (1888); Simmons v. United States, 142 U.S. 148, 12 S.Ct. 171, 35 L.Ed. 968 (1891); Wiborg v. United States, 163 U.S. 632, 16 S.Ct. 1127, 1197, 41 L.Ed. 289 (1896); Horning v. District of Columbia, 254 U.S. 135, 41 S.Ct. 53, 65 L.Ed. 185 (1920); Quercia v. United States, 289 U.S. 466, 53 S.Ct. 698, 77 L.Ed. 1321 (1933)
 
 
 [15]
 See cases cited in note 14, supra
 
 
 [16]
 See, e.g., United States v. Mura, 191 F.2d 886 (2d Cir. 1951); United States v. Rainone, 192 F.2d 860 (2d Cir. 1951); Nordgren v. United States, 181 F.2d 718, 12 Alaska 671 (9th Cir. 1950); Neeper v. United States, 93 F.2d 409 (8th Cir. 1937); Wellman v. United States, 297 F. 925 (6th Cir. 1924); Guy v. United States, 336 F.2d 595 (4th Cir. 1964)
 
 
 [17]
 Illustrative of the confusion in some of the cases decided to this effect is the comment in Malone v. United States, supra, that the Schwachter case, supra, pointed out that where a fact is uncontradicted by the evidence, the trial judge does not commit reversible error in stating that fact to the jury. Malone v. United States, supra, 238 F.2d at 852. However, the court in Schwachter v. United States, supra, did not attempt to weigh the evidence on the issue there involved, but merely stated that it had been 'contested' and that, 'Under his plea of not guilty it was one of his defenses, which he was entitled to have submitted to the jury.' Schwachter v. United States, supra, 237 F.2d at 644. This confusion was perpetuated by the incorporation of the Malone reading of Schwachter in the case of Guy v. United States, supra
 Also, in Lyons v. United States, supra, when counsel was informed that the trial court was going to instruct as a matter of law on an essential element of the offense, he gave his 'implied consent' thereto and acquiesced to the instruction. Lyons v. United States, supra, 325 F.2d at 375. This is sufficient to distinguish Lyons from the case at hand, for, as indicated above, the right to have all essential elements of the indictment submitted to the jury may be waived. Moreover, waiver also existed in United States v. Jonikas, supra, and in Neeper v. United States, supra.
 
 
 [18]
 This apparently was the course taken in United States v. Rainone, supra, note 16, and Neeper v. United States, supra, note 16. Statement to this effect is found in Schwachter v. United States, supra, 237 F.2d at 644. See also. Horning v. District of Columbia, supra, and particularly the statement of Mr. Justice Brandeis, dissenting, that 'whether a defendant is found guilty by a jury or is declared to be so by a judge is not, under the federal Constitution, a mere formality.' (At 140 of 254 U.S., at 55 of 41 S.Ct.)
 
 
 [19]
 This language of Justice Jackson's dissent in Spector was analyzed and approved in Schwartz, Administrative Law and the Sixth Amendment: 'Malaise in the Administrative Scheme', 40 A.B.A.J. 107 (February, 1954)
 
 
 [20]
 Fraenkel, Can the Administrative Process Evade the Sixth Amendment?, 1 Syracuse L.Rev. 173, 185 (1949)
 
 
 [21]
 40 A.B.A.J. 107, 166 (February, 1954)
 
 
 [1]
 Int.Rev.Code of 1954, 6201
 
 
 [2]
 28 U.S.C. 1346; Int.Rev.Code of 1954, 6213, 7422